## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| BREAKWATER TREATMENT AND WELLNESS CORP, <br><br>               Plaintiff, <br><br> v. <br><br> THE CITY OF ASBURY PARK, JOHN MOOR, Individually and as Mayor of the City of Asbury Park, MICHELE ALONSO, Individually and as Director of Planning and Redevelopment of the City of Asbury Park, the ASBURY PARK ZONING BOARD OF ADJUSTMENT; CHRISTOPHER AVALLONE, Individually and as Chair of the Asbury Park Zoning Board of Adjustment, RUSSEL LEWIS, Individually and as a member of the Asbury Park Zoning Board of Adjustment; WENDI GLASSMAN, Individually and as a member of the Asbury Park Zoning Board of Adjustment; DANIEL HARRIS, Individually and as a member of the Asbury Park Zoning Board of Adjustment; JILL POTTER, Individually and as a member of the Asbury Park Zoning Board of Adjustment, JOHN DOE AND/OR JANE DOES 1-25, the said name being fictitious, XYZ COMPANIES 1-10, the said name being fictitious, <br><br>               Defendants. | Hon. Michael A. Shipp, U.S.D.J. <br> Hon. Brendan Day, U.S.M.J. <br><br> Docket No. 3:23-cv-03661 <br><br> Civil Action <br><br> **DOCUMENT FILED** <br> **ELECTRONICALLY** <br><br> Motion Return Date: October 16, 2023 |

BRIEF IN SUPPORT OF MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(B)(6) ON BEHALF OF DEFENDANTS ASBURY PARK ZONING BOARD OF ADJUSTMENT, CHRISTOPHER AVALLONE, JOHN SCULLY, RUSSELL LEWIS, WENDI GLASSMAN, DANIEL HARRIS, AND JILL POTTER

Michael S. Nagurka, Esq.
       On the Brief

Jean L. Cipriani, Esq.
       On the Brief

Danielle A. Rosiejka, Esq.
       On the Brief

Michael S. Nagurka (061562014)
Rothstein, Mandell, Strohm, Halm &
Cipriani, P.A.
98 E. Water Street
Toms River, New Jersey 08753
732-363-0777 (P); 732-905-6555 (F)
mnagurka@rmshc.law
*Attorney for Defendants, Asbury Park Zoning Board of Adjustment, Christopher Avallone, John Scully, Russell Lewis, Wendi Glassman, Daniel Harris, and Jill Potter*

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ..............................................................................III

PRELIMINARY STATEMENT....................................................................... 1

STATEMENT OF FACTS AND PROCEDURAL HISTORY ................................. 2

STANDARD OF REVIEW.............................................................................. 6

ARGUMENT

  POINT I

    THE § 1983 CLAIM IN COUNT 1 WHICH ALLEGES THE
    ZONING BOARD AND ITS MEMBERS ACTED WITH
    DELIBERATE AND CONSCIOUS INDIFFERENCE MUST BE
    DISMISED WITH PREJUDICE FOR FAILURE TO STATE A
    CLAIM.................................................................................................. 7

    A. THE § 1983 CLAIM BASED ON A VIOLATION OF SUBSTANTIVE
    DUE PROCESS SHOULD BE DISMISSED WITH PREJUDICE
    .............................................................................................................. 8

    B. A. THE § 1983 CLAIM BASED ON A VIOLATION OF PROCEDURAL
    DUE PROCESS SHOULD BE DISMISSED WITH PREJUDICE............12

  POINT II

    PLAINTIFF DOES NOT HAVE A VIABLE CLAIM UNDER 42
    U.S.C § 1985............................................................................................ 14

  POINT III

    ALL INDIVIDUALLY NAMED ZONING BOARD MEMBERS
    ARE ENTITLED TO QUALIFEID IMMUNITY ON ALL
    FEDERAL CLAIMS ................................................................................ 16

POINT IV

THE DETERMINATION OF THE LAND USE BOARD IS
ENTITLED TO A PRESUMPTION OF VALIDITY AND
COUNT THREE SHOULD BE DISMISSED WITH
PREJUDICE ................................................................................................ 19

POINT V

THE STATE LAW CLAIM BASED ON A VIOLATION OF
THE OPEN PUBLIC MEETINGS ACT SHOULD BE
DISMISSED WITH PREJUDICE FOR FAILURE TO STATE A
CLAIM......................................................................................................... 22

POINT VI

THE BOARD IS ENTITIELD TO ACCEPT OR REJECT
WITNESS TESTIMONY AND COUNT FIVE SHOULD BE
DISMISSED WITH PREJUDICE ……………………………26

POINT VII

THE STATE LAW CLAIM BASED ON PROCEDURAL
DEFECTS SHOULD BE DISMISSED WITH PREJUDICE FOR
FAILURE TO STATE A CLAIM......................................................... 31

POINT VIII

COUNT SEVEN SHOULD BE DISMISSED WITH
PREJUDICE FOR FAILING TO STATE A CAUSE OF ACTION
AND FOR FAILING TO STATE A CLAIM ....................................... 33

POINT IX

THE SQUARE CORNERS DOCTIRNE IS NOT AN
INDEPENDENT CAUSE OF ACTION AND COUNT EIGHT
SHOULD BE DISMISSED WITH PREJUDICE ................................. 33

CONCLUSION………………………………………………………………35

# TABLE OF AUTHORITIES

**Cases**                                                                                    **Page**

*Anastasio v. Planning Bd. of Tp. of West Orange,*
  209 N.J. SUper. 499 (App. Div.) certif. den., 107 N.J. 46 (1986) ............................ 21

*Anderson v. Creighton,*
  483 U.S. 635 (1987) ......................................................................................... 17

*Ashcroft v. al-Kidd,*
  563 U.S. 731 (2011) ................................................................................... 19, 17

*Ashcroft v. Iqbal,*
  556 U.S. 662 (2009) ......................................................................................... 6, 7

*Beadling v. William Bowman Assoc.*
  355 N.J. Super 70 (App. Div. 2002) .................................................................. 27

*Bubridge v. Mine Hill Tp.*
  117 N.J.376 (1990) .......................................................................................... 20

*Bello v. Walker*
  840 F.2d 11224 (3d Cir. 1991*)* ....................................................................... 13

*Bell Atl. Corp. v. Twombly,*
  550 U.S. 544 (2007) ......................................................................................... 6, 7

*Brosseau v. Haugen,*
  543 U.S. 194 (2004) ......................................................................................... 18

*CBS Outdoor v. Lebanon Plan. Bd.*
  414 N.J. Super. 563 (App. Div. 2010) ............................................................... 21

*Cherry Hill Towers, L.L.C. v. Township of Cherry Hill*
  407 F. Supp. 2d 648 (D. N.J. 2006) ............................................................ 8, 9, 10

*City of Escondido v. Emmons,*
  586 U.S. ___, 139 S. Ct. 500 (2019) ............................................................ 18, 19

*City of Tahlequah v. Bond,*
    595 U.S. 9 (2021)................................................................................. 17

*Cnty. of Sacramento v. Lewis,*
    523 U.S. 833 (1998)............................................................................. 10

*Conley v. Gibson*
    355 U.S. 41 (1957) ................................................................................ 7

*Creative Environ. Inc. v. Estabrook,*
    680 F.2d 822 (1st Cir. 1982) ............................................................... 11

*Davis Enters. v. Karpf,*
    105 N.J. 476 (1987).............................................................................. 20

*DeBlasio v. Zoning Bd. of Adjustment,*
    53 F.3d 592 (3d Cir. 1995) ................................................................... 9

*Dist. of Columbia v. Wesby,*
    583 U.S. 48 (2018) ........................................................... 16, 17, 18, 19

*Eichenlaub v. Twp. of Indiana*
    385 F.3d 274 (3d Cir. 2004).......................................................... 10, 11

*Estate of Taylor v. Director, Div. of Taxation,*
    422 N.J. Super. 336 (App. Div. 2011) ............................................... 34

*FMC Stores v. Borough of Morris Plains,*
    100 N.J. 418 (1985)......................................................................... 33-34

*Griffin v. Breckenridge,*
    403 U.S. 88 (1971) .............................................................................. 15

*Gomez v. Toledo*
    446 U.S. 635 (1980) .............................................................................. 7

*Gould Elecs., Inc. v. United States,*
    220 F.3d 169 (3d Cir. 2000)................................................................. 6

*Hunter v. Bryant,*
    502 U.S. 224 (1991) ............................................................................ 18

*Indep. Enters., Inc. v. Pittsburgh Water and Sewer Auth.,*
    103 F.3d116 (3d Cir. 1997) ........................................................ 9

*Kaufman v. Bd. of Adjustment, Sea Girt,*
    110 N.J. 551 (1988)................................................................... 20

*Kehr Packages, Inc. v. Fidelcor, Inc.,*
    926 F.2d 1406 (3d Cir. 1991) .................................................... 6

*Kisela v. Hughes,*
    584 U.S. ___, 138 S. Ct. 1148 (2018) ...................................... 19

*Kramer v. Bd. of Adjustment, Sea Girt*
    45 N.J. 268 (1965)...............................................................20, 27

*Lee-Patterson v. New Jersey Transit Bus Operations, Inc.*
    957 F. Supp. 1391 (D. N.J. 1997) ............................................ 15

*Midnight Sessions Ltd. V. City of Philadelphia,*
    945 F.2d 667 (3d Cir. 1991) ...............................................12, 13

*Mammaro v. N.J. Div. of Child Prot. & Permanency,*
    814 F.3d 164 (3d Cir.), *cert. denied*, 137 S. Ct. 161 (2016) ......... 18

*Med. Ctr. v. Princeton Zoning Bd. of Adjustment,*
    343 N.J. Super. 177 (App. Div. 2001) ...................................... 20

*Med. Realty v. Bd. of Adj.,*
    228 N.J. Super. 226 (App. Div. 1988) ...................................... 21

*Markowitz v. Northeast Land Co.*
    906 F. 2d 100 (3rd Cir.1990) .................................................... 7

*MFS v. DiLazaro,*
    771 F. Supp 2d 382 (E. D.P.a. 2011)........................................ 10

*Mitchell v. Forsyth,*
    472 U.S. 511 (1985) ................................................................ 16

*Mruz v. Caring, Inc.,*

39 F. Supp. 2 (D.N.J. 1999) ............................................................................ 7

*Mullenix v. Luna*,
577 U.S. 7 (2015).............................................................................. 17, 18

*Nietzke v. Williams*
490 U.S. 319 (1989) ........................................................................... 7

*Parrat v. Taylor*
451 U.S. 527 (1981) ............................................................................ 12

*Paruszewski v. Towsnhip of Elsinboro*
154 N.J. 45 (1998)........................................................................... 31-32

*Phillips v. Cnty. of Allegheny*,
515 F.3d 224 (3d Cir. 2008) .............................................................. 10

*Plumhoff v. Rickard*,
572 U.S. 765 (2014) ........................................................................... 16

*Press of Atlantic City v. Ocean County Joint Ins. Fund*
337 N.J. Super. 480 (Law Div. 2000) .................................................. 25

*Ransom v. Marrazzo*,
848 F. 2d (3rd Cir. 1988)...................................................................... 7

*Reichle v. Howards*,
566 U.S. 658 (2012) ........................................................................... 18

*Reinauer Realty Corp. v. Nucera*,
59 N.J. SUper 189 (App. Div. 1960) ................................................. 26-27

*Rivkin v. Dover Twp. Rent Leveling Bd*
671 A.2d 567 (N.J. 1996) ............................................................. 13, 14

*Saucier v. Katz*,
533 U.S. 194 (2001) ........................................................................... 17

*Schrob v. Catterson*,
948 F. 2d 1402 (3rd Cir.1991) ............................................................. 7

*Tanis v. Township of Hampton,*
  306 N.J. Super. 588 (App. Div. 1997) .......................................................... 32

*Thomas v. Ford Motor Co.*
  70 F. Supp 2d (D. N.J. 1999) ...................................................................... 7

*United Artists Theatre Circuit, Inc. v. Twp. of Warrington r,*
  316 F.3d 392 (3d Cir. 2003). ................................................................. 8, 9

*United Brotherhood of Carpenters & Joiners Local 610 v. Scott*
  463 U.S. 825 (1983) ................................................................................. 15

*Village of Belle Terre v. Boraas*
  416 U.S. 1 (1974)..................................................................................... 10

*White v. Pauly,*
  580 U.S. 73 (2017) .................................................................................. 18

*Williams v. Sec'y Pa. Dep't of Corr.,*
  848 F.3d 549 (3d Cir. 2017)................................................................. 16, 17

*Woodcock v. Calabrese,*
  148 N.J. Super. 526 (Dist. Ct. 1977)........................................................ 25

*Zaloga v. Borough of Moosic,*
  841 F.3d 170 (3d Cir. 2016) .................................................................... 17

## **Statutes**

Rule 4:69-1................................................................................................. 13

N.J. Stat. Ann. § 40:55D-70 ...................................................................... 22

N.J. Stat. Ann. § 10:4-8 ............................................................................ 23

N.J. Stat. Ann. § 10:4-12 .......................................................................... 23

## PRELIMINARY STATEMENT

Despite both recreational and medical cannabis being expressly prohibited in all zones throughout the City of Asbury Park, Breakwater Treatment and Wellness filed this state law complaint in federal court in an attempt to forestall any and all future, theoretical cannabis development in the City of Asbury Park. To be clear, no other applications for either recreational or medical cannabis have been filed with the Zoning Board. Not only is plaintiff seeking monetary damages for the denial of its use variance application, but Breakwater also seeks extraordinary, unjustified and unprecedented injunctive relief to prohibit the City of Asbury Park from approving any potential cannabis retail business within the City until their application is approved.

In New Jersey, "cannabis," known as recreational marijuana and "medical marijuana" are regulated separately.  Plaintiff's land use application sought use variance approval to locate a medical marijuana facility in the City of Asbury Park. By way of City Ordinance, this use is not permitted in any zones. The plaintiff failed to present sufficient proofs to justify the extraordinary relief authorized by N.J.S.A 40:55D-70(d) and the use variance was denied. Plaintiff filed this action in a runaround attempt to force the Zoning Board to approve a use that the City Council has expressly prohibited. By filing this baseless complaint, plaintiff is seeking to force itself into business despite this express Legislative prerogative.

The application was heard over the course of three hearings. The Board afforded the plaintiff ample time to present its application. The named board members exercised

their quasi-judicial powers and denied the application. A use variance is extraordinary relief, not an entitlement.  The resolution of denial is comprehensive and sets forth clearly the considerations and determination of the zoning board.

Not only are the state law claims completely without merit, worse than that, the federal civil rights counts pled by Breakwater strain credibility. The individual board members are entitled to qualified immunity and plaintiff has failed to demonstrate a violation of either the substantive or procedural due process rights.

Thus, the Court should grant this motion and dismiss (a) all § 1983 claims in Count 1 with prejudice for failure to state a claim, (b) all § 1985 claims against the Zoning Board in Count 2 for failure to state a claim, (c) all claims against the individually named members of the Zoning Board of Adjustment on the basis of qualified immunity, and (d) dismiss all remaining state counts against the Zoning Board of Adjustment with prejudice for failure to state a claim.

## STATEMENT OF FACTS AND PROCEDURAL HISTORY

Breakwater operates a medical marijuana business with locations in Cranbury and Roselle Park, New Jersey. (Certification of Michael Nagurka, Esq. ("Nagurka Cert."), Exhibit A, Plaintiff's Complaint at ¶ 3, ¶ 52(b)-(c)). On May 12, 2022, they sought use variance approval to operate a location in the City of Asbury Park.[1] (Nagurka Cert., Exhibit A, at ¶ 21). They did this while being fully aware the City is

---

[1] Plaintiff's application with the Zoning Board of the City of Asbury Park sought a use variance, preliminary and final site plan approval and bulk variance relief.

zoned against such a use. (Id. at ¶ 17, 24). The subject property is located in the Light Industrial Zone which permits indoor manufacturing and assembly uses that do not emit smoke or fumes, produce noise or vibrations, and other general business uses that do not provide retail sales or services. (Id. at ¶ 22).

Evaluation of Breakwater's application was held over the course of three hearings that took place on December 13, 2022, February 14, 2023 and March 28, 2023. (Id. at ¶ 45, 56, 60). At the first hearing on December 13, 2022, the Municipal Attorney for the City of Asbury Park appeared at the start of the hearing and read a prepared statement expressing the long-standing intent of the governing body to prohibit medical marijuana throughout the City. (Id. at ¶ 49-50).

At the December 13, 2022 hearing, the plaintiff was represented by Matthew E. Gillson, Esq., of Weiner Law Group LLC., who presented testimony from James Froehlich, the applicant's Chief of Staff for Breakwater Treatment and Wellness. (Id. ¶ 52(a)). At the February 14, 2023 hearing, the plaintiff presented testimony from engineer, Jordan Rizzo, a Project Leader at CME and architect, William Mandara of Mancini Duffy.  (Id. ¶ 56, 58).

At the March 28, 2023 hearing, the plaintiff presented testimony from traffic engineer, Matthew Seckler, PE, PP, PTOE of Stonefield Engineering and Ronald Reinertsen, PP, AICP, a Project Leader at CME Associates on land use planning. (Id. ¶ 60, 62).

The Board also heard testimony from the Board's Planner and Traffic Engineer which controverted the testimony of the applicant's experts. *Nagurka Cert., Exhibit B, Breakwater Resolution* at p. 24, ¶2 and p. 18, ¶2. At the conclusion of the final hearing, the Zoning Board voted unanimously to deny the plaintiff's application seeking use variance approval, preliminary and final site plan, "c" variance relief and design waiver relief to permit the operation a cannabis facility. *Exhibit A* at ¶65.

In its comprehensive resolution, the Board set forth its findings expressing that the Applicant failed to satisfy both the positive and negative criteria necessary for a use variance under the Municipal Land Use Law. *See Exhibit B.* Based upon the credible sworn testimony of the Board's Professionals, the Board found that the site is not particularly well suited for the proposed use. *Exhibit B* at p. 31, ¶ 20.. The Board found that the testimony from the Applicant's Planner, Mr. Ronald Reinertsen to be not credible, fatally flawed and consisted of "net opinion" testimony. *Id.* at p. 31, ¶ 21.

The Board found that much of the testimony of James Froehlich, the applicant's Chief of Staff to be not credible and unsupported. Id. at p. 11. Similarly, the Board found that much of the testimony of Jordan Rizzo and William Mandara for the applicant to be largely a constellation of net opinions. *Id.* at p. 15. The Board found that the applicant failed to demonstrate the requisite "special reasons" for granting the d(1) use variance. *Id.* at p. 32, ¶ 22. Regarding the negative criteria, the Board determined the application could not be granted without substantial detriment to the

public good and the surrounding neighborhood particularly with regard to location of the loading zone and the absence of on-site parking if the additional is sold. *Id.* at p. 31, ¶ 23.

The application raised further potential negative impacts to on-street parking. More specifically, availability for residents and visitors in summer months when demand swells significantly. Based upon the testimony of Breakwater's planner, the Board found the variance could not be granted without substantial detriment to the public good or without substantially impairing the intent and purpose of the zone plan and ordinance. *Id.* at p. 33, ¶ 23

The Board found the testimony of its Planner to be credible regarding the policy foundation for the LI zone, and the anticipated detrimental effects on the purposes and function of the zone, and as evidence of the substantial detrimental impacts to the Master Plan and Zoning Ordinance that would result from the granting of the variance. *Id.* at p. 34, ¶ 21. In addition, the Board found deviations from the provisions of the zoning ordinance were individually or cumulatively so substantial as to substantially impair the intent and purpose of the zone plan. *Id.* at p. 34, ¶ 27.

The Board further found that the benefits of the application do not substantially outweigh the detriment and that the granting of the variance pursuant to *N.J.S.A.* 40-55D-70(d) is completely inappropriate and would be in dereliction of the Board's sworn

duties. *Id.* at p. 34, ¶ 27.   In conclusion, the Board found that the applicant did not meet the statutory requirements for the above-enumerated variances. *Id.* at p. 38, ¶ 39.

On May 23, 2023, the Board adopted its resolution of denial. *See Exhibit B.*  This appeal was filed 45 days later on July 7, 2023.

## **STANDARD OF REVIEW**

Motions to dismiss for failure to state a claim are analyzed under Fed. R. Civ. P. 12(b)(6). "In a Rule 12(b)(6) motion, the court evaluates the merits of the claims by accepting all allegations in the complaint as true, viewing them in the light most favorable to the plaintiffs, and determining whether they state a claim as a matter of law." *Gould Elecs., Inc. v. United States*, 220 F.3d 169, 178 (3d Cir. 2000). The moving party bears the burden of showing that no claim has been presented. *See Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting *Twombly*, 550 U.S. at 555). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of

misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is

entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

In <u>Thomas v. Ford Motor Co.</u>, 70 F. Supp. 2d 521, 524–25 (D. N.J. 1999), the

Court observed that:

> "In considering a motion to dismiss under Rule 12(b)(6), the court
> may dismiss a complaint if it appears certain that the plaintiff
> cannot prove any set of facts in support of its claims which would
> entitle it to relief." *Mruz v. Caring, Inc.,* 39 F.Supp.2d 495, 500
> (D.N.J.1999) (Orlofsky, J.) (citing *Ransom v. Marrazzo,* 848 F.2d
> 398, 401 (3d Cir.1988)).

> "While all well-pled allegations are accepted as true and reasonable
> inferences are drawn in the plaintiff's favor, the Court may dismiss
> a complaint where, under any set of facts which could be shown to
> be consistent with a complaint, the plaintiff is not entitled
> to relief." *Id.* (citing *Gomez v. Toledo,* 446 U.S. 635, 636, 100 S. Ct.
> 1920, 64 L.Ed.2d 572 (1980); *Schrob v. Catterson,* 948 F.2d 1402,
> 1405 (3d Cir. 1991); *Markowitz v. Northeast Land Co.,* 906 F.2d 100,
> 103 (3d Cir.1990)); *see also Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.
> Ct. 99, 2 L.Ed.2d 80 (1957).

> Finally, "Rule 12(b)(6) authorizes a court to dismiss a claim on the
> basis of a dispositive issue of law." *Neitzke v. Williams,* 490 U.S. 319,
> 326–27, 109 S. Ct. 1827, 104 L.Ed.2d 338 (1989) (noting that this
> procedure "streamlines litigation by dispensing with needless
> discovery and factfinding").

POINT I

**THE § 1983 CLAIM IN COUNT 1 WHICH ALLEGES
THE ZONING BOARD AND ITS MEMBERS
ACTED WITH DELIBERATE AND CONSCIOUS
INDIFFERENCE MUST BE DISMISSED WITH
<u>PREJUDICE FOR FAILURE TO STATE A CLAIM</u>**

Count One of the plaintiff's Complaint alleges an unspecific violation of 42 U.S.C. § 1983. Namely, that all defendants violated plaintiff's right to due process by depriving them of a fair hearing, and by treating others more favorably than plaintiff without a legitimate reason.  As a result, plaintiff claims that it has suffered financial and reputational damages. Plaintiff demands damages on this Count against all Defendants, jointly and severally, for: compensatory damages; punitive damages; injunctive relief prohibiting defendants form approving any cannabis retail business within the borders of the City of Asbury Park unless plaintiff's application is approved; and attorney's fees and costs of suit.

In order to prevail on a § 1983 claim, a plaintiff must allege that person acting under color of state law has deprived the plaintiff of a right, privilege or immunity secured by the U.S. Constitution or other federal law. *See* 42 U.S.C. § 1983. Municipal defendants do not dispute that they were acting under color of state law. Here, the federal right the plaintiff alleges was violated is their Fourteenth Amendment right to due process of the law.  Plaintiff alleges what is essentially an adverse ruling of a zoning board to refuse granting of a use variance to operate a cannabis business in the City of Asbury Park has violated their substantial and procedural due process rights. Importantly, there is no right to operate a cannabis business, medical or otherwise, within the City. Plaintiff fails to state a claim upon which relief can be granted on either theory.

A.  **THE § 1983 CLAIM BASED ON A VIOLATION OF SUBSTANTIVE DUE PROCESS SHOULD BE DISMISSED WITH PREJUDICE**

To prevail on a substantive due process claim arising from a municipal land use decision, a plaintiff must establish that (1) he has a property interest protected by due process, and (2) the government's deprivation of that property interest "shocks the conscience." *Cherry Hill Towers, L.L.C. v. Township of Cherry Hill*, 407 F. Supp. 2d 648,

654 (D. N.J. 2006) *citing Spradlin v. Borough of Danville*, No. 4:CV 02 2237, 2005 WL 3320788 at *8 (M.D. Pa. Dec. 7, 2005)[2]; *United Artists Theatre Circuit, Inc. v. Twp. of Warrington*, 316 F.3d 392, 399-400 (3d Cir. 2003). Here, the plaintiff cannot establish either prong as a matter of law.

The Plaintiff has failed to allege a property interest worthy of substantive due process protection. The Third Circuit has held that a substantive due process claim grounded in an arbitrary exercise of governmental authority may be maintained only where the plaintiff has been deprived of a "particular quality of property interest." *DeBlasio v. Zoning Bd. of Adjustment,* 53 F.3d 592, 600 (3d Cir. 1995). Only fundamental property interests are worthy of substantive due protection. Id. at 599.  *See also Indep. Enters., Inc. v. Pittsburgh Water and Sewer Auth.,* 103 F.3d 1165 (3d Cir. 1997) (finding that the interest in being awarded municipal contracts is not a "fundamental" interest entitled to the protection of substantive due process).

In some cases, ownership of land has been found to be a property interest worthy of substantive due process protection. *Cherry Hill Towers, L.L.C. v. Township of Cherry Hill,* 407 F. Supp. 2d 648, 654 (D. N.J. 2006) (internal citations omitted). While the Third Circuit has provided little additional guidance on the precise contours of the "particular quality of property interest" that is entitled to substantive due process protection,  "mere ownership" itself is not in itself enough.

Breakwater is a contract lessee and proposed operator of an Alternate Treatment Facility to be located within the City.   Here, plaintiff is not even a landowner with a property interest. Rather they are lessee asserting a right to a use variance  to allow them to establish a cannabis business where the sale of cannabis is prohibited by ordinance. First, as a matter of law, the plaintiff cannot establish that their substantive due process

---

[2] *See Nagurka Cert., Exhibit C.*

rights have been violated as to property they do not own and currently do not occupy. Second, an interest to operate a cannabis business that is prohibited by ordinance is not an interest worthy of substantive due process protection. A plaintiff does not have a substantive due process claim merely by alleging deliberate and arbitrary abuse of government power. If that was the case, any applicant could come into federal court to challenge even the most mundane and routine zoning decisions, ignoring the oft-cited admonition that the role of the federal courts "is not and should not be to sit as a zoning board of appeals." *Village of Belle Terre v. Boraas*, 416 U.S. 1, 13 (1974) (Marshal, J., dissenting). Accordingly, the Plaintiff cannot establish the required first prong, that they have a property interest worthy of substantive due process protection.

Assuming arguendo that the plaintiff has a protected property interest, the facts alleged by the plaintiff do not rise to the level that would "shock the conscience." The Supreme Court's decision in County of *Sacramento v. Lewis,* 523 U.S. 833 (1998) established the "shocks the conscience" test. Id. at 654. This was a new test, to replace the prior, improper motive test and was "designed to avoid converting federal courts into super zoning tribunals." *Cherry Hill Towers*, 407 F. Supp. at 655. While there is no 'calibrated yard stick' to determine whether challenged actions shock the conscience, it is well accepted that the standard encompasses 'only the most egregious official conduct". Lewis, 523 U.S. at 846-47. As explained in *MFS v. DiLazaro*, the Third Circuit has held that three standards may support a finding that government action "shocks the conscience": (1) deliberate indifference; (2) gross negligence or arbitrariness; or (3) intent to cause harm. 771 F.Supp.2d 382, 439 (E.D.Pa.2011) *citing Phillips v. County of Allegheny*, 515 F.3d 224, 241 (3d Cir.2008).

In *Eichenlaub v. Twp. of Indiana*, 385 F.3d 274, 286 (3d Cir.2004), the plaintiffs alleged that "zoning officials applied subdivision requirements to their property that were not applied to other parcels; that they pursued unannounced and unnecessary

inspection and enforcement actions; that they delayed certain permits and approvals; that they improperly increased tax assessments; and that they maligned and muzzled the Eichenlaubs." The Third Circuit concluded that such complaints were "examples of the kind of disagreement that is frequent in planning disputes." Id.

In *Creative Environ., Inc. v. Estabrook*, 680 F.2d 822, 831 (1st Cir.1982), the plaintiffs alleged that the town's rejection of their development plan to build a subdivision, the raising of the filing fee for subdivision plans, and the town's insistence that plaintiffs submit an entirely new subdivision plan when the state court only required them to designate "open space" was a misapplication of state law resulting in a denial of their right to conduct a legitimate business. The court rejected their argument and concluded that plaintiffs complaints were "... typical of the run of the mill dispute between a developer and a town planning agency, regardless of [plaintiff's] characterizations of it and of defendants' alleged mental states, [and did not] rise to the level of a due process violation." Id. at 833.

Although plaintiff may have raised some concerns about the procedure followed by the zoning board, and the possible preference for another business, the facts as alleged by plaintiff, do not rise to the level that would "shock the conscience" as that standard encompasses only the most egregious official conduct.  The facts alleged by plaintiff are similar to *Eichenlaub* and *Creative Environ*, where both appellants sought federal review for an adverse ruling by the zoning board; namely, a refusal to grant a use variance. Every appeal by a disappointed business owner from an adverse ruling of the local zoning board involves some claim of abuse of legal authority, but it is simply not enough to give these state law claims constitutional labels such as 'due process' or 'equal protection' to raise a substantial federal question under Section 1983.

Here, in viewing the facts in the light most favorable to the plaintiff, the misconduct alleged by plaintiff does not meet the required "shock the conscience"

standard to bring a federal substantive due process claim. For those reasons, plaintiff's substantive due process claim must be dismissed with prejudice.

    **B.    THE § 1983 CLAIM BASED ON A VIOLATION OF PROCEDURAL DUE PROCESS SHOULD BE DISMISSED WITH PREJUDICE**

    In order to establish a violation of procedural due process, a plaintiff must establish the state procedure for challenging the deprivation does not satisfy the requirements of procedural due process. *Midnight Sessions Ltd. V. City of Philadelphia*, 945 F.2d 667, 680 (3d Cir. 1991). The Supreme Court has ruled, "[t]he fundamental requirement of due process is the opportunity to be heard and it is an "opportunity which must be granted at a meaningful time and in a meaningful manner." *Parrat v. Taylor*, 451 U.S. 527, 540 (1981) *overruled on other grounds by Daniels v. Williams*, 474 U.S. 327, 328 (1986)(overruling *Parrat's* holding that the Due Process Clause is implicated by negligent acts; *Daniels* holds that the Due Process Clause "is simply not implicated by a negligent act of an official causing unintended loss of or injury to life, liberty, or property.").

    It is undisputed that the zoning board held three hearings related to Breakwater's application. The first hearing occurred on December 13, 2022 and the two final hearings took place on February 14, 2023 and March 28, 2023. Plaintiff argues the first hearing on December 13, 2022 was inadequate because Mr. Raffetto, attorney for the City of Asbury Park made a comment prior to hearing the plaintiff's application and they were not provided an opportunity to cross-examine him. *See Nagurka Cert., Exhibit A ¶ 49-51*. Plaintiff further alleges the hearings were inadequate due to "favoritism concomitant to the relationships of the Mayor and his allies with one or more cannabis vendors other than Breakwater" and they were therefore deprived of procedural due process *See Nagurka Cert., Exhibit A, ¶ 65*.

Giving every inference in favor of the plaintiff and assuming that the hearings before the zoning board were in fact tainted because the board was biased in favor of some other cannabis vendor, the hearings did not operate to deprive plaintiff of their property.  Plaintiff was not prevented from leasing the building in the City. Nor were they prevented from operating a business within the city.  The plaintiff does not have a property interest in the sought use variance.  It is as simple as Breakwater not having a right to a variance and as a result having no deprivation of property.

A state provides constitutionally adequate procedural due process when it provides reasonable remedies to rectify a legal error by a local administrative body. *Bello v. Walker*, 840 F.2d 1124, 1128 (3d Cir. 1991)(citations omitted). In other words, when a state "affords a full judicial mechanism with which to challenge the administrative decision" in question, the state provides adequate procedural due process, regardless of whether the plaintiff avails him or herself of the provided appeal mechanism. *Midnight Sessions Ltd. V. City of Philadelphia*, 945 F.2d 667, 682 (3d Cir. 1991).  In this Circuit it has been held that a state provides adequate due process when it provides "reasonable remedies to rectify legal error by a local administrative body." *Bello*, 840 F.2d at 1128. New Jersey provides a full judicial process for challenging adverse zoning decisions. Pursuant to *Rule* 4:69–1*, et seq.* of the New Jersey Court Rules, plaintiff is entitled to a review, hearing and relief by filing a complaint, before the expiration of forty-five days from the time the plaintiff received notice that his or her application was denied, in the Superior Court, Law Division, bearing the designation "In Lieu of Prerogative Writs." Instead, plaintiff has filed this farcical federal complaint.

In *Rivkin v. Dover Twp. Rent Leveling Bd.*, 671 A.2d 567, 577 (N.J. 1996), the plaintiffs alleged that the presence of a biased board member deprived them of property without due process of law. Similar to this matter, in *Rivkin*, the remedy afforded to the aggrieved party is "an action in lieu of prerogative writs." *Id.* at 580-81.  This is a right

under the New Jersey Constitution that permits "parties to seek 'review, hearing and relief' in the Superior Court of all actions of municipal agencies.'" Id. at 581 *citing N.J. Const. art. VI*, § 5, ¶ 4. "A court may set aside a municipal board decision if it is shown to be arbitrary, capricious or unreasonable, not supported in the evidence, or otherwise contrary to law." Id. (citations omitted). The court in *Rivkin* concluded that an action in lieu of prerogative writs was an adequate remedy even if it did not afford all the protections and remedies provided under Section 1983 actions. Id.

Here, plaintiff has not alleged that the New Jersey courts are biased against them or operate in favor of other cannabis vendors. Plaintiff has not pled, nor is there anything in the record to suggest, that the procedure provided to them under the New Jersey Constitution and pursuant to the New Jersey court rules violates plaintiff's procedural due process rights under the Fourteenth Amendment of the U.S. Constitution. Accordingly, Plaintiff's claim for federal procedural due process must be dismissed with prejudice.

<u>POINT II</u>

**PLAINTIFF DOES NOT HAVE A VIABLE CLAIM <u>UNDER 42 U.S.C 1985</u>**

Plaintiff alleges that all named defendants conspired to violate their Due Process Rights and use 42 U.S.C. § 1985. First, it is unclear which subsection plaintiff is asserting a conspiracy allegation against all defendants under. It is not specified whether it is subsection (1), (2), or (3). *See Plaintiff's Complaint*. For purposes of this motion, it is presumed that this claim is made under § 1985 (3). It should be noted that the usage of this section is patently absurd in the context of the decision of a municipal zoning board. Plaintiff seeks to shoehorn this federal count into his obviously poorly disguised prerogative writ that <u>should be</u> in state court and not further clogging the federal judiciary with a pointless complaint akin to barking at the moon.

14

Briefly, in general, to be liable under this civil rights conspiracy statute, plaintiffs must prove: that defendants did conspire, for purposes of depriving, either directly or indirectly, any person or class of persons of equal protection of the laws, that one or more conspirators did, or caused to be done, any act in furtherance of object of conspiracy, and that another person was injured in his person or property or deprived of having and exercising any right or privilege of the Citizen of United States. *See generally United Brotherhood of Carpenters & Joiners Local 610 v. Scott,* 463 U.S. 825, 829-29 (1983). Further, the Supreme Court in *Griffin v. Breckenridge*, 403 U.S. 88 (1971) added a requirement to this conspiracy statute that the conspiracy be motivated by class-based animus. Thus, "[i]n order to state a claim under Section 1985, the plaintiff must allege a conspiracy, motivated by a discriminatory based animus, for the purpose of depriving any person or class of the equal protection of the law and an act in furtherance of the conspiracy, whereby a person is injured." *Lee-Patterson v. New Jersey Transit Bus Operations, Inc.,* 957 F. Supp. 1391 (D. N.J 1997).

At minimum, there must be an underlying tort. There is no tort here. More importantly, there is no discriminatory intent even alleged in the entirety of the complaint. Asserting a civil conspiracy against all these defendants with not even a scintilla of evidence nor an allegation of discriminatory intent is similar to Evil Knievel attempting to jump over the grand canyon on a Schwinn bicycle. Plaintiff seeks to hold the Zoning Board hostage with a federal complaint because they are unhappy with the result of their use variance application. Moreover, there is an inconvenient truth for plaintiff. Namely, no other applicant has been approved for a medical marijuana business and there are no pending applications for approval. For that reasons, any allegations or even a suggestion of a conspiracy to push down plaintiff while propping up a separate business strains the very definition of credibility.

For all the foregoing reasons, Count II should be dismissed against the petitioning defendants.

POINT III

## ALL INDIVIDUALLY NAMED ZONING BOARD MEMBERS ARE ENTITLED TO QUALIFIED IMMUNITY ON ALL FEDERAL CLAIMS

City of Asbury Park Zoning Board members, Christopher Avallone, John Scully, Russell Lewis, Wendi Glassman, Daniel Harris, and Jill Potter are entitled to qualified immunity because Breakwater does not enjoy a "clearly established" constitutional right to have a medical marijuana business. Thus, Counts 1 and 2 should be dismissed with prejudice.[3]

Qualified immunity protects government officials from liability under § 1983 "unless it is shown that the official violated a statutory or constitutional right that was 'clearly established' at the time of the challenged conduct." *Plumhoff v. Rickard*, 572 U.S. 765, 778 (2014). "'Clearly established' means that, at the time of the officer's conduct, the law was 'sufficiently clear' that 'every reasonable official would understand that what he is doing' is unlawful." *Dist. of Columbia v. Wesby*, 583 U.S. 48, 138 S. Ct. 577, 589 (2018) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011)). An official is immune unless there was either "controlling authority" or a "robust consensus of cases of persuasive authority" on the books when the official acted that placed the unlawfulness of the official's conduct "beyond debate." *al-Kidd*, 563 U.S. at 741; *see also Williams v.*

---

[3] Qualified immunity is a question of law for a court to resolve. *See Hunter v. Bryant*, 502 U.S. 224, 228 (1991). "Unless the plaintiff's allegations state a claim of violation of clearly established law, a defendant pleading qualified immunity is entitled to dismissal before the commencement of discovery." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985).

*Sec'y Pa. Dep't of Corr.*, 848 F.3d 549, 570 (3d Cir. 2017) ("[A] qualified immunity analysis looks through the rearview mirror, not the windshield. The inquiry focuses on the state of the relevant law when the violation allegedly occurred."). This standard is a "demanding" one, *Wesby*, 138 S. Ct. at 589, and it is "tilted in favor of shielding government actors." *Zaloga v. Borough of Moosic*, 841 F.3d 170, 175 (3d Cir. 2016).

The Supreme Court has "repeatedly told courts not to define clearly established law at too high a level of generality." *City of Tahlequah v. Bond*, 595 U.S. 9, 142 S. Ct. 9, 11 (2021). "The dispositive question is whether the violative nature of *particular* conduct is clearly established," *Mullenix v. Luna*, 577 U.S. 7, 12 (2015) (emphasis in original), so the inquiry "must be undertaken in light of the specific context of the case, not as a broad general proposition." *Saucier v. Katz*, 533 U.S. 194, 201 (2001). "The general proposition, for example, that an unreasonable search or seizure violates the Fourth Amendment is of little help in determining whether the violative nature of particular conduct is clearly established." *al-Kidd*, 563 U.S. at 742. Otherwise, plaintiffs could "convert the rule of qualified immunity" into "a rule of virtually unqualified liability simply by alleging violation of extremely abstract rights," thus "making it impossible for officials reasonably to anticipate when their conduct may give rise to liability for damages." *Anderson v. Creighton*, 483 U.S. 635, 639 (1987).

Instead, because the "clearly established" standard requires "a high 'degree of specificity,'" the "legal principle" at issue must "clearly prohibit the [official's] conduct

in the particular circumstances before him." *Wesby*, 138 S. Ct. at 590 (quoting *Mullenix*, 577 U.S. at 13); *see also White v. Pauly*, 580 U.S. 73, 137 S. Ct. 548, 552 (2017) (stating that "the clearly established law must be 'particularized' to the facts of the case"); *Brosseau v. Haugen*, 543 U.S. 194, 201 (2004) (stating that an official is immune unless prior case law "squarely governs" the specific conduct at issue). "It is not enough that the rule is suggested by then-existing precedent. The precedent must be clear enough that every reasonable official would interpret it to establish the particular rule the plaintiff seeks to apply." *Id.* (citing *Reichle v. Howards*, 566 U.S. 658, 666 (2012)). Thus, without "sufficient precedent at the time of action, factually similar to the plaintiff's allegations, to put defendant on notice that his or her conduct is constitutionally prohibited," an official is immune. *Mammaro v. N.J. Div. of Child Prot. & Permanency*, 814 F.3d 164, 169 (3d Cir.), *cert. denied*, 137 S. Ct. 161 (2016) (citation omitted).

Here, defendants Avallone, Scully, Lewis, Glassman, Harris, and Potter are entitled to qualified immunity. The Complaint alleges that these individual members somehow committed a civil rights violation by choosing to not "usurp[] the role of our elected officials," argued the applicant came to the "wrong venue," and "crossing that line [overstepping elected officials determination] for me is a really difficult one for me." *See Plaintiff's Complaint*, ¶ 66(a)-(d). Under the Fourteenth Amendment, Breakwater is entitled to not have a decision made in an arbitrary or capricious manner.

However, to overcome qualified immunity, "the clearly established right must be defined with specificity" and "not . . . at [such] a high level of generality." *City of Escondido*

18

*v. Emmons*, 586 U.S. ___, 139 S. Ct. 500, 503 (2019)  (quoting *Kisela v. Hughes*, 584 U.S. ___, 138 S. Ct. 1148, 1152 (2018)). Instead, Breakwater. must "'identify a case where [a government official] acting under similar circumstances [as Avallone, Scully, Lewis, Glassman, Harris, and Potter] was held to have violated the [Fourteenth] Amendment.'" *Wesby*, 138 S. Ct. at 590 (quoting *White*, 137 S. Ct. at 552). But research has not revealed a single case, let alone any "controlling authority" or a "robust consensus of cases of persuasive authority," holding that an official violates a company's constitutional rights by denying an application for a medical marijuana facility while not approving one for any other entity.

Thus, the § 1983 and § 1985 claims against Avallone, Scully, Lewis, Glassman, Harris and Potter outlined in Counts 1 and 2 should be dismissed with prejudice.

POINT IV

**THE DETERMINATION OF THE LAND USE BOARD IS ENTITLED TO A PRESUMPTION OF VALIDITY AND COUNT THREE SHOULD BE DISMISSED WITH PREJUDICE**

The face of this Complaint raises no federal question as all of the claims expressly arise under state law.  The references to constitutional violations are pretextual at best, there is no valid civil rights argument forwarded by plaintiff. Not only is the federal question in this case insubstantial, but it is also nonexistent and arguably incoherent.  A passing reference to the federal constitution in an essentially state law complaint is insufficient for the exercise of federal jurisdiction. Count Three of the complaint is

purely a State Law claim.  This court lacks subject matter jurisdiction over claims under the New Jersey Municipal Land Use Law.

It is well established that when a reviewing court is considering an appeal from an action taken by a land use board, the standard employed is whether the grant or denial was arbitrary, capricious or unreasonable. *See Burbridge v. Mine Hill Tp.,* 117 N.J. 376, 385 (1990); *Kramer v. Bd. of Adjustment, Sea Girt,* 45 N.J. 268, 296 (1965); *Med. Ctr. v. Princeton Zoning Bd. of Adjustment,* 343 *N.J.Super.*177, 198 (App.Div.2001).

In that same vein, factual determinations of the board are presumed to be valid, and the exercise of its discretionary authority based on such determinations will not be overturned unless it is deemed to be arbitrary, capricious or unreasonable. *Burbridge, supra,* 117 N.J. at 385.

The purpose of judicial review is for the court to determine whether or not the board acted within the statutory guidelines and properly exercised its discretion. *Burbridge, supra,* 117 N.J. at 384–85. The reviewing court is not permitted to substitute its judgment for that of the board's. *Kaufmann v. Planning Bd. for Warren Township,* 110 N.J. 551, 558 (1988). A reviewing court is not to "suggest a decision that may be better than the one made by the board of adjustment or planning board, but to determine whether the board could reasonably have reached its decision." *Davis Enters. v. Karpf,* 105 N.J. 476, 485 (1987). For this Court to find the City of Asbury Park Zoning

Board of Adjustment's ("Zoning Board") decision was arbitrary and capricious, it would be required to find plain error. *Anastasio v. Planning Bd. Of Tp. of West Orange*, 209 N.J. Super. 499, 522 (App Div.) *certif. den.* 107 N.J. 46 (1986).

Moreover, greater deference is ordinarily given to the denial of a variance than to a grant. *CBS Outdoor v. Lebanon Plan. Bd.,* 414 N.J. Super. 563, 587 (App. Div. 2010). In the event of the denial of a variance, the plaintiff has "the heavy burden of proving that the evidence presented to the board was so overwhelmingly in favor of the applicant that the board's action can be said to be arbitrary, capricious or unreasonable." *Med. Realty v. Bd. Of Adj.,* 228 N.J. Super. 226, 233 (App. Div. 1988).

Plaintiff's claim that the denial of their Use Variance application is arbitrary, capricious or unreasonable, a State Law claim that cites no rule or statute. Breakwater asserts the Board's actions were arbitrary, capricious and unreasonable because they will "suffer serious financial and reputational damages." It is noteworthy that plaintiff does not even cite a single error made by the Zoning Board. Instead, Breakwater pleads a mishmash of whining complaints about the Board giving weight to the Governing Body's determination of uses permitted in the LI Zone. Absent a single allegation that the denial is arbitrary, capricious or unreasonable, Breakwater provides no evidentiary support for its claim that the denial was actually arbitrary, capricious and unreasonable. *See Plaintiff's Complaint*, ¶. 98.

Indeed, Plaintiff only alleges in conclusory fashion that "[t]he aforesaid conduct of the Municipal Defendants as articulated in paragraphs 1-88, (which set forth the identity of the parties, and a timeline of the presentation of the application) renders the Zoning Board Resolution of Denial arbitrary, capricious  and unreasonable." Breakwater's pleading asserts the application presented "would have provided community benefits in the form of allowing retail sales of medical cannabis." Further, plaintiff claims the Resolution was an "ad hoc" decision. Despite these two flimsy assertions, plaintiff has not presented a single claim even suggesting the board failed to properly apply the positive and negative criteria as required for either the variances under N.J.S.A. 40:55D-70(c) or (d), or any claim of error on behalf of the Board.  This clear failure should inform the evaluation of this motion.

Accordingly, because Plaintiffs fail to provide the Court a basis to sustain this cause of action, Count III should be dismissed with prejudice.

POINT V

**THE STATE LAW CLAIM BASED ON A VIOLATION OF THE OPEN PUBLIC MEETINGS ACT SHOULD BE DISMISSED WITH PREJUDICE FOR FAILURE TO STATE A CLAIM**

As set forth in Point III above, Count IV of the complaint is purely a State Law claim.  This court lacks subject matter jurisdiction over claims under the New Jersey Open Public Meetings Act.

Under the Open Public Meetings act, at N.J.S.A. 10:4-8, a meeting is defined as:

> [A]ny gathering whether corporeal or by means of communication equipment, which is attended by, or open to, all of the members of a public body, held with the intent, on the part of the members of the body present, to discuss or act as a unit upon the specific public business of that body. Meeting does not mean or include any such gathering (1) attended by less than an effective majority of the members of a public body, or (2) attended by or open to all the members of three or more similar public bodies at a convention or similar gathering.

Public business is defined as:

> all matters which relate in any way, directly or indirectly, to the performance of the public body's functions or the conduct of its business.

Pursuant to N.J.S.A. 10:4-12(b), permissible reasons for executive session include:

> (1) matter which, by express provision of federal law, State statute, or rule of court shall be rendered confidential or excluded from the provisions of subsection a. of this section;

> (2) matter in which the release of information would impair a right to receive funds from the Government of the United States;

> (3) material the disclosure of which constitutes an unwarranted invasion of individual privacy such as any records, data, reports, recommendations, or other personal material of any educational, training, social service, medical, health, custodial, child protection, rehabilitation, legal defense, welfare, housing, relocation, insurance, and similar program or institution operated by a public body pertaining to any specific individual admitted to or served by an institution or program, including but not limited to, information relative to the individual's personal and family circumstances, and any material pertaining to admission, discharge, treatment, progress, or condition of any individual, unless the individual concerned (or, in the case of a minor or an incapacitated individual, the individual's guardian) shall request in writing that the material be disclosed publicly;

23

(4) collective bargaining agreement, or the terms and conditions which are proposed for inclusion in any collective bargaining agreement, including the negotiation of the terms and conditions thereof with employees or representatives of employees of the public body;

(5) matter involving the purchase, lease, or acquisition of real property with public funds, the setting of banking rates, or investment of public funds, if it could adversely affect the public interest if discussion of the matters were disclosed;

(6) tactics and techniques utilized in protecting the safety and property of the public, provided that their disclosure could impair that protection, or investigations of violations or possible violations of the law;

(7) pending or anticipated litigation or contract negotiation other than in subsection b. (4) herein in which the public body is, or may become, a party, or matters falling within the attorney-client privilege, to the extent that confidentiality is required in order for the attorney to exercise his ethical duties as a lawyer;

(8) matter involving the employment, appointment, termination of employment, terms and conditions of employment, evaluation of the performance of, promotion, or disciplining of any specific prospective public officer or employee or current public officer or employee employed or appointed by the public body, unless all the individual employees or appointees whose rights could be adversely affected request in writing that the matter or matters be discussed at a public meeting; or

(9) deliberations of a public body occurring after a public hearing that may result in the imposition of a specific civil penalty upon the responding party or the suspension or loss of a license or permit belonging to the responding party as a result of an act or omission for which the responding party bears responsibility.

OPMA requires public meetings to be held before the public with adequate notice. "The intent of the statute is to allow officials to meet privately with counselors and advisors in order to discuss policy, formulate plans of action and generally to have an exchange of ideas." *Id.* at 154–55, 382 *A.*2d 413 (citing *Woodcock v. Calabrese,* 148 *N.J. Super.* 526, 535 (Dist.Ct.1977)).

A violation of OPMA occurs when formal action is taken in the closed session and never ratified or even discussed in a public session. In *Houman, supra,* 155 *N.J. Super.* at 157, the court concluded that borough council was entitled to hold a closed meeting to discuss whether to take tax appeals and hire outside counsel. However, the council violated the Act by taking formal action because the final decision was not appropriate to be made in a closed session. "The intent of the statute [*N.J.S.A.* 10:4–12(b)(7)] is to allow officials to meet privately with counselors and advisors in order to discuss policy, formulate plans of action and generally to have an exchange of ideas." *Id.* at 154–55, (citing *Woodcock v. Calabrese,* 148 *N.J. Super.* 526, 535, (1977)).

OPMA specifically provides for an executive session to discuss matters that are protected by the attorney-client privilege pursuant to subsection (b)(7) Matters that fall within the attorney-client privilege are free from public review under OPMA notwithstanding a governmental entity is a client and despite the strong public policy favoring maximum access to governmental deliberations. *Press of Atlantic City v. Ocean County Joint Ins. Fund,* 337 *N.J. Super.* 480 (Law Div. 2000).

Here, plaintiff alleges that the board went into executive session prior to hearing its application pursuant to the attorney client privilege exemption.  Plaintiff does not allege that the subject matter of the discussion was not privileged nor does the plaintiff allege the Board took official action while in executive session.  As is clear from analyzing the entirety of this complaint, Breakwater has no leg to stand on and has resorted to federal gamesmanship in an effort to force the City to the table. If Breakwater wanted to do anything but harass these individual defendants, they would have filed a prerogative writ in state court. Breakwater is upset about the rightful decision by the Zoning Board, and it now wants to make sure the City pays through litigation costs.

In light of the foregoing, Count 4 cannot be sustained and should be dismissed with prejudice.

<u>POINT VI</u>

**THE BOARD IS ENTITLED TO ACCEPT OR REJECT WITNESS TESTIMONY AND COUNT FIVE SHOULD <u>BE DISMISSED WITH PREJUDICE</u>**

As set forth in Point III above, Count V of the complaint is purely a State Law claim.  This court lacks subject matter jurisdiction over claims under the New Jersey Municipal Land Use Law (hereinafter "MLUL").

It is well settled that a zoning board "has the choice of accepting or rejecting the testimony of witnesses. Where reasonably made, such choice is conclusive on appeal".

26

*Reinauer Realty Corp. v. Nucera*, 59 *N.J. Super.* 189, 201 (App. Div. 1960). 'Opinions that lack foundation are worthless.  However, if an expert provides the whys and wherefores rather than bare conclusions it is not considered a net opinion". *Beadling v. William Bowman Assoc.,* 355 *N.J. Super.* 70 (App. Div. 2002).

In highly controversial and debatable zoning cases, courts must recognize local officials 'who are thoroughly familiar with their community's characteristics and interests and are the proper representatives of its people are undoubtedly the best equipped to pass initially on such applications for variance.' *Kramer v. Bd. of Adjustment, Sea Girt*, 45 N.J. 268, 296 (1965) *citing Ward v. Scott*, 16 N.J. 16, 23 (1954). Under the MLUL, the Legislature intended a presumption in favor of boards of adjustment and municipal governing bodies will act fairly and with proper motives and for valid reasons. Discretionary authority to recommend to the governing body that a variance be granted for 'special reasons' in cases like the present one has been vested in the Board of Adjustment by the Legislature. *Id.*

In its comprehensive Resolution, the Zoning Board expressly rejected the testimony of James Froehlich, Chief of Staff for the applicant, finding it to be not credible and unsupported by expert opinion.  Specifically, Mr. Froehlich could not provide accurate medical information supporting medical cannabis because he is not qualified to do so. Mr. Froehlich did not clarify whether the Breakwater intended to offer adult use cannabis at any time in the future.  The Board determined there was no

factual basis for Mr. Froehlich's speculation regarding what differentiates plaintiff's products from others in the market. Mr. Froehlich was unaware of whether the proposed space could accommodate customers if plaintiff were to offer adult use cannabis. Mr. Froehlich advised the Board there is no medical staff on site at the alternative treatment centers. Mr. Froehlich's testimony regarding medical cannabis's effectiveness for patients was determined to be purely anecdotal and not based on research or really anything beyond talking points provided by Breakwater. When questioned by the Board regarding Breakwaters' involvement in research Mr. Froehlich stated that Breakwater has not conducted its own research, nor has it contributed to any such research.  He offered inconsistent testimony regarding the use of medical cannabis for glaucoma patients and noted that there would be a minimal odor from the cannabis in the vault and could not provide detailed information about the odor-removing filters he claimed they would be using. Additionally,  there was no expert testimony presented regarding the any potential orders or the type of odor-removing filters. *See Nagurka Cert., Exhibit A (Resolution, p. 7-11; ¶ 8)*

Similarly, the Board rejected the testimony of Breakwater's traffic engineer. More specifically, the Board found Mr. Seckler's traffic and parking testimony on these issues lacked foundational support.  Particularly, Seckler was unable to testify whether parking would be sufficient if Breakwater offered adult use marijuana.  He compared Asbury Park to the Roselle Park dispensary yet did

so without providing any examples of similarity. The Board's Traffic Engineer testified that much of Seckler's testimony should be dismissed because it was based on very old traffic counts. In addition, the plaintiff's expert had two opportunities to take summer traffic counts at the proposed site in Asbury Park, the Roselle Park dispensary, as well as other dispensaries in Monmouth County but failed to do so and provided no valid reason for this blatant failure *See Nagurka Cert., Exhibit A (Resolution, p. 18-20)*

The Board's Engineer opined that, absent actual summer traffic counts, traffic engineers are left with these adjustment percentages like 30%. Seckler was unable to respond to questions about whether the site could operate if the applicant expands into adult use as to the parking lot. The Board determined that the Traffic Engineer's testimony was deficient. His testimony disregards the tremendous increase in traffic during the summer months *See Nagurka Cert., Exhibit A (Resolution, p. 21)*

When discussing the requested variance relief, the applicant's testimony was not uncontroverted. Breakwaters' planner testified the applicant meets the positive criteria special reasons under Purpose I of the MLUL by promoting a desirable visual environment to create design techniques but yet again gave no examples or specifics. The Board found the planner provided no support for his statement regarding this site's suitability for a dispensary He testified the impact was minimal not substantial but gave no examples or specifics, merely parroting

29

the language of the statute. Their planner emphasized the Master Plan's repeated use of the term healthcare yet offered no expert testimony that cannabis has any medical or healthcare uses, in fact he conceded that the medical benefits are merely anecdotal. *See Nagurka Cert., Exhibit A (Resolution, p. 21-24)*

In rebuttal, the Board's Planner testified that the Master Plan as one of its goals states, "Limit the LI light industrial district to light industrial uses". He testified that that the fact that the Governing Body did not address cannabis in their land use plan element in 2017 or in the reexamination report is evidence of their intent to continue the prohibition against cannabis. Mr. Sullivan further testified that the opt-out ordinance and the resolution together provide evidence of the Governing Body's clear intent to prohibit cannabis in all forms.

Furthermore, the Board Planner testified the 2017 Land Use Plan Element and Reexamination Report specifically cite the need to avoid retail development in the Light Industrial LI zone, which is a limited swath of the City located predominantly along Memorial Drive. The rationale and legislative intent in this policy is to ensure that Asbury Park retains land to provide for industrial businesses, including craftspersons, artisans and contractors that provide necessary services and jobs necessary to support the booming waterfront redevelopment/rehabilitation and the other redevelopment areas throughout the City. *See Nagurka Cert., Exhibit A (Resolution, p. 24-26)*.

In light of the foregoing and in recognition of the Board's legislatively granted discretion to accept or reject testimony presented to it, Count 5 cannot be sustained and should be dismissed with prejudice.

<u>POINT VII</u>

**THE STATE LAW CLAIM BASED ON PROCEDURAL DEFECTS SHOULD BE DISMISSED WITH <u>PREJUDICE FOR FAILURE TO STATE A CLAIM</u>**

As set forth in Point III above, Count IV of the complaint is purely a State Law claim.  This court lacks subject matter jurisdiction over claims under the New Jersey Municipal Land Use Law.

New Jersey Law recognizes the right of a municipality to appear before a land use board on a specific land use application, and the right of a duly appointed attorney to speak on the governing body's behalf.

Plaintiff alleges the City's Attorney appeared before the Board and read a statement into the record on behalf of the Governing Body of the City of Asbury Park. The New Jersey Supreme Court has held that a Township has the authority to oppose a nonconforming use certification application through the appearance of the township attorney before the zoning board of adjustment.

In *Paruszewski v. Township of Elsinboro*, 154 N.J. 45 (1998), the Township attorney appeared on behalf of the governing body and citizens opposed to the application, although he had not been retained by any of the citizens.  He participated in the hearing,

examined witnesses and submitted oral and written arguments on behalf of the governing body. He was not subject to cross-examination, as he appeared as an attorney and not a fact or expert witness. Additionally, the applicant did not object to his participation. The Court held that the appearance of the attorney on behalf of the municipality "provides a means by which the public interest is represented in proceedings of substantial public importance." Representation of the public interest in applications posing potential negative impacts on the surrounding area is a major concern to the entire community. *Tanis v. Township of Hampton,* 306 *N.J. Super.* 588, 607–08. (App.Div.1997).

In this matter, the Township Attorney appeared at the beginning of the plaintiff's application, he read a prepared statement on behalf of the governing body. He was not sworn as a witness. He did not appear as a fact or expert witness; he did not even present testimony. The applicant did not object to his appearance, nor did the applicant attempt request to cross-examine the attorney. Mr. Raffeto appeared on behalf of the municipality as he is authorized to do under New Jersey law. *See Nagurka Cert., Exhibit A (Resolution, p. 6, ¶ 7).*

Accordingly, Count VI of the Plaintiff's complaint fails to state a cause of action under which relief can be granted and requires dismissal with prejudice.

<u>POINT VIII</u>

**COUNT SEVEN SHOULD BE DISMISSED WITH PREJUDICE FOR FAILING TO STATE A CAUSE OF <u>ACTION AND FOR FAILING TO STATE A CLAIM</u>**

Count Seven of the complaint, seeking a judgment against the Defendant Board because the Resolution is "inconsistent with testimony" is not a recognized cause of action in either State or Federal Court.  This appears to be another iteration of Count III and has no individual merit. There is no statute or case law cited by the plaintiff to justify an independent cause of action based upon alleged inconsistency of the findings of fact and conclusions of law. Accordingly, this Count should be dismissed.

Accordingly, because Plaintiffs fail to provide the Court a basis to sustain this cause of action, Count III should be dismissed.

<u>POINT IX</u>

**THE SQUARE CORNERS DOCTRINE IS NOT AN INDEPENDENT CAUSE OF ACTION AND COUNT <u>EIGHT SHOULD BE DISMISSED WITH PREJUDICE</u>**

Plaintiff alleges that the Board has "failed to turn square corners" by "ignor[ing] the uncontroverted testimony provided by plaintiff's experts to provide the Mayor and Council with the result they desired."  The Square Corners Doctrine is not a cause of action, it is a doctrine that states the government has to fairly deal with property owners It is primarily utilized in cases involving taxation. In *FMC Stores v. Borough of Morris Plains*, 100 N.J. 418 (1985), the New Jersey Supreme Court announced the "square corners"

doctrine.  In sum, that doctrine stands for the rule that when a governmental entity deals with the public, government agencies must "turn square corners," "comport itself with compunction and integrity," and not "conduct itself so as to achieve or preserve any kind of bargaining or litigational advantage" over a member of the public.  As the Court observed, this means that "government may have to forego the freedom of action that private citizens may employ in dealing with one another." *Id.*

In *Estate of Taylor v. Director, Div. of Taxation*, 422 N.J. Super. 336 (App. Div. 2011), plaintiff alleged the Division of Taxation had engaged in misleading conduct, so much so that the square corners doctrine dictated a ruling in plaintiff's favor.  The New Jersey Appellate Division, in an opinion by Judge Rodriguez, disagreed that the Division had done anything inequitable, and found the square corners doctrine inapplicable.

Plaintiff fails to specify what the "good faith negotiations" would have been for. The Board was not engaged in negotiations with the plaintiff.  The Zoning Board denied Use Variance relief on an application for development that took place over the course of several public and recorded hearings. There is no misleading conduct or evidence that the Board has engaged in any "nefarious" conduct.

As the "Square Corners Doctrine" is not a cause of action justifying the requested relief, Count VIII should be dismissed with prejudice.

## <u>CONCLUSION</u>

Thus, the Court should grant this motion and dismiss (a) all § 1983 claims in Count 1 with prejudice for failure to state a claim, (b) all § 1985 claims against the Zoning Board in Count 2 for failure to state a claim, (c) all claims against the individually named members of the Zoning Board of Adjustment on the basis of qualified immunity, and (d) dismiss all remaining state counts against the Zoning Board of Adjustment with prejudice for failure to state a claim.

Respectfully submitted,

ROTHSTEIN,     MANDELL,
STROHM,     HALM     &
CIPRIANI, P.A.

By:     <u>s/ Michael S. Nagurka</u>

Dated: September 15, 2023                Michael S. Nagurka, Esq.

35