Stephen J. Edelstein, Esq. – Attorney I.D. 285031972
**WEINER LAW GROUP LLP**
629 Parsippany Road
Parsippany, New Jersey 07054
Tel. (973) 403-1100; Fax (973) 403-0010
E-Mail sedelstein@weiner.law
Attorneys for Plaintiff

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| BREAKWATER TREATMENT AND WELLNESS CORP., <br><br> Plaintiff, <br><br> vs. <br><br> THE CITY OF ASBURY PARK; JOHN MOOR, individually and as Mayor of the City of Asbury Park;  MICHELE ALONSO, individually and as Director of Planning and Redevelopment of the City of Asbury Park; the ASBURY PARK ZONING BOARD OF ADJUSTMENT;  CHRISTOPHER AVALLONE, individually and as Chair of the Asbury Park Zoning Board of Adjustment; JOHN SCULLY, individually and as Vice Chair of the Asbury Park Zoning Board of Adjustment; RUSSEL LEWIS, individually and as a member of the Asbury Park Zoning Board of Adjustment;  WENDI GLASSMAN, individually and as a member of the Asbury Park Zoning Board of Adjustment; DANIEL HARRIS, individually and as a member of the Asbury Park Zoning Board of Adjustment; JILL POTTER, individually and as a member of the Asbury Park Zoning Board of Adjustment; JOHN DOE AND/OR JANE DOES 1 - 25, the said name being fictitious; XYZ COMPANIES 1-10, the said name being fictitious, <br><br> Defendants. | **Civil Action No. 23-3661 (MAS)(JBD)** <br><br><br><br> **AMENDED COMPLAINT AND JURY DEMAND** |

1

Breakwater Treatment and Wellness Corp., a corporation of the State of New Jersey, with its principal office at 2 Corporate Drive, Suite E, Cranbury, New Jersey, says:

## JURISDICTION AND VENUE

1.      This Court has original subject matter jurisdiction over the violations alleged in this Verified Complaint pursuant to the provisions of 42 U.S.C. § 1983, 1985 and 1988 and 28 U.S.C. §§ 1331 and 1343.

2.      Venue is proper in the United States District Court for the District of New Jersey pursuant to 28 U.S.C. § 1391(a) in that the events giving rise to the claims set forth in the Complaint occurred in the District of New Jersey.

## PARTIES

3.      Plaintiff Breakwater Treatment and Wellness Corp. ("Breakwater") is one of the original license holders and medical cannabis businesses in the State of New Jersey.

4.      Breakwater desires to open a satellite Alternative Treatment Center ("ATC") in Asbury Park, specifically in the existing building located at 807 Memorial Drive and 906 First Street.

5.      In keeping with this goal, Breakwater put together a team of engineers, architects, planners and attorneys to commission plans and put together an application for zoning approval to allow an ATC in an existing industrial building.

6.      Defendant City of Asbury Park is a municipal corporation of the State of New Jersey. Asbury Park has a Council-Manager form of government.

7.      Defendant John Moor is the Mayor of Asbury Park.  Mayor Moor presides at all meetings of the City Council and has such powers as are conferred by N.J.S.A. 40:69A-81 through N.J.S.A. 69A-98.  Mayor Moor is sued in both his individual and his official capacities.

8.     Defendant Michele Alonso is the Director of Planning and Redevelopment of the City of Asbury Park.  Director Alonso is sued in both her individual and her official capacities.

9.     Defendant Asbury Park Zoning Board of Adjustment ("Zoning Board") is a municipal board of the City of Asbury Park.  It has primary jurisdiction over the application for zoning approval made by Breakwater.

10.    Defendant Christopher Avallone is the Chair of the Zoning Board.  He is sued in both his individual and his official capacities.

11.    Defendant John Scully is the Vice Chair of the Zoning Board.  He is sued in both his individual and his official capacities.

12.    Defendants Russell Lewis, Wendi Glassman, Daniel Harris, and Jill Potter are members of the Zoning Board.  They are sued in both their individual and their official capacities.

13.    Defendants City of Asbury Park, John Moor, Michele Alonso, Zoning Board, Christopher Avallone, John Scully, Russell Lewis, Wendy Glassman, David Harris, and Jill Potter are sometimes referred to in this Complaint, collectively, as the "Municipal Defendants."

14.    Defendants John Doe and/or Jane Doe, the said names being fictitious, are individuals who have acted, in addition to the named Defendants, to deprive Breakwater of rights guaranteed by the Constitution of the United States and the laws of the State of New Jersey.

15.    Defendants XYZ Companies are business organizations who are actual and/or potential competitors of Breakwater.

## BACKGROUND

16.    On or about March 22, 2018, Mayor Moor wrote a letter to New Jersey Governor Philip D. Murphy expressing interest in hosting an Alternative Treatment Center in Asbury Park.

17.     Inconsistently, on or about July 23, 2019, in response to an inquiry from AP NJ Health LLC, a potential ATC owner, Director Alonso replied that the use is not permitted in the City of Asbury Park.

18.     The position expressed by Director Alonso, as aforesaid, was disingenuous, and the true position of Mayor Moor and of the Municipal Defendants was not that the City wanted no cannabis facility, but rather that they wished to and did prefer and show favoritism to an operator of their choosing.

19.     In fact, upon information and belief, for the period beginning on or about January 2022, and continuing to the present, various members of the City of Asbury Park Administration including Mayor Moor, Deputy Mayor Amy Quinn, Councilperson Eileen Chapman and others, including City Attorney Frederick Raffetto, have been meeting and communicating with principal(s) and representatives of Asbury Seaweed, LLC ("Asbury Seaweed"), a recreational cannabis business and potential competitor of Breakwater, regarding operating a cannabis facility in Asbury Park.

20.     These activities by Mayor Moor and his colleagues included but were not limited to arranging meetings for representatives of Asbury Seaweed, giving them insights and advice, and generally attempting to ease Asbury Seaweed's path to operating in Asbury Park.

**The Breakwater Application**

21.     On or about May 12, 2022, Breakwater filed an application for use variance, preliminary and final site plan approval, and related bulk variances to the Zoning Board ("the Application").  The documents submitted with that Application and thereby made part of the record include:

      a.  Signed and sealed plans prepared by CME Associates Consulting and Municipal Engineers dated 4/12/22

b.   Signed and Sealed Plans prepared by Mancini Duffy dated 5/24/22

c.   Traffic Impact Study prepared by CME Associates Consulting and Municipal
     Engineers

d.   Signed and Sealed Survey of the subject property

e.   Certificate of Payment of taxes and sewer fees

f.   Proof of Submission to the Monmouth County Planning Board

g.   Contribution Disclosure Statements from all applicants and professionals

h.   Photographs of the site

i.   Application and escrow fees and completed W-9 form

22.     The property which is the subject of the Application is known as 807 Memorial Drive and 906 First Avenue and is located on the west side of Memorial Drive and is a combined area of 22,500 square feet, and is located in the LI, Light Industrial Zone.  Currently Lot 2 is undeveloped and used to store vehicles and Lot 6 contains the existing building which operates as a classic car business.  Both lots are currently 100 percent (100%) impervious. The Applicant proposes to convert the existing building to an ATC and will use the same footprint and the same loading zone that are currently existing and in use.

23.     The Lot 6 portion of the Subject Property contains an existing 2 story commercial building, with Lot 2 being vacant. Existing land uses reflect permitted uses in the underlying zone districts and the commercial nature of the area. In general, the LI Zone District itself is a more permissive zone relating to underlying permitted uses than surrounding business and residential zones.

**Director Alonso's Attempts to Short Circuit the Breakwater Hearing but is Forced to Relent**

24.     On or about May 31, 2022, Breakwater's legal counsel received a letter from Director Alonso, incorrectly stating that the application submitted by Breakwater for a medical marijuana facility could not be heard by the Asbury Park Zoning Board of Adjustment because the City had prohibited all cannabis sales in the municipality and "thus the municipality does not believe it can legally hear this application."

25.     In writing that letter, Director Alonso was acting in concert with Mayor Moor and others opposed to the Breakwater Application, and the content of her letter was incorrect.

26.     On or about June 9, 2022, Breakwater's attorney sent a letter to Ms. Alonso stating that the Plaintiff is in fact entitled to a hearing before the Zoning Board, based on case law as well as the Municipal Land Use Law.  The City never responded to this letter.

27.     On or about June 27, 2022, Breakwater's attorney sent a letter to Director Alonso indicating that the forty-fifth day from submission of Breakwater's application had passed and as such, pursuant to the Asbury Park Ordinance and the MLUL, the application is deemed administratively complete.  The City never responded to this letter.

28.     On July 5, 2022, Breakwater's attorney again wrote to Director Alonso, having had no response from her or anyone else from the City relating to the application's completeness or placement on an Agenda for Board hearing.  The letter of July 5, 2022, indicated that if no response was received by Friday, July 8, 2022, Breakwater would assume that the City was still refusing to place the application on an Agenda for hearing.

29.     On July 5, 2022, Frederick C. Raffetto, Esq., on behalf of the City of Asbury Park indicated that the July 5 letter had been received and was "under review."

6

30.     On July 7, 2022, Breakwater's attorney sent an e-mail to Mr. Raffetto and Director Alonso requesting a substantive reply to the July 5 request for a hearing date.

31.     Also on July 7, 2022, Michael McQueeny, Esq., an attorney ostensibly representing Asbury Seaweed, emailed Mayor Moor a "follow up" email regarding guidance from the NJ DOH with respect to satellite locations of ATCs with specific advice on how to "argue against" a potential ATC seeking a variance in Asbury Park.   Based on the dates, this is clearly in reference to the Breakwater application, which was filed on May 12, 2022, as there were no other pending cannabis applications in the City.

32.     On July 8, 2022, Breakwater's attorney received an e-mail from Director Alonso indicating that the application would be on the Agenda of the Zoning Board's regular meeting of August 9, 2022, provided that all fees were paid, and all missing items were supplied.   That e-mail included a letter attachment requesting that certain items be added to the plans or updated.   This letter also stated, "Please note that we will require a lot consolidation, otherwise a variance for the parking lot will be necessary."

33.     On July 8, 2022, Mayor Moor emailed some of the Municipal Defendants questioning why the Zoning Board is required to hear the application.

34.     On or about July 28, 2022, Breakwater published notice of the hearing in the Asbury Park Press and certified mailings of notice were sent to all property owners within 200 feet and all others entitled to service as is required by the Municipal Land Use Law ("MLUL").

35.     Also on or about July 28, 2022, Breakwater's attorney sent a letter to the Zoning Board Secretary with all supplemental submission requirements as outlined in the letter from Director Alonso dated July 8, 2022.   The documents submitted and thereby made part of the record include:

        a.   The requested Project Description

b.  Preliminary and Final Site Plan prepared by CME Associates Consulting and Municipal Engineers with a revision date of 7/15/22

c.  Revised Architectural Plan prepared by Mancini Duffy

d.  Drainage Statement prepared by CME Associates Consulting and Municipal Engineers with a revision date of 7/13/22

e.  Letter of No Interest from Monmouth County Planning Board

f.  Certification Letter from Freehold Soil Conservation District

g.  Additional application and escrow fees

36.    Breakwater received reports from Insight Engineering, the engineering consultant to the Board and a report from Clark Caton Hintz, the planning consultant to the Board as well as a letter from the City of Asbury Park Fire Official indicating that they have reviewed the proposed site plan for the application and have no issues at this time.

37.    On August 9, 2022, Breakwater's attorney sent a letter to the City requesting that the Application be carried to the September 13, 2022, hearing of the Board and indicated that notice would be resent and republished.  Additionally, in that letter, Breakwater agreed to extend the Board's time to act on the application if such extension was necessitated by Breakwater's requested delay.

**The City Purports to "Clarify" its Intent, but, in Reality, Planned a Way to Justify the Denial Breakwater Application**

38.    On July 29, 2022, Mr. Mondello, attorney brought in as a "cannabis specialist" to represent the Zoning Board, solely for the Breakwater Application, emailed Director Alonso, Mr. Raffetto, Chairman Avallone, and the Zoning Board consultants suggesting a use variance for cannabis would be a usurpation of the governing body's authority if the use was "specifically excluded" from the Zoning Ordinance.  Alonso responded only to Raffetto, but not the others, "Let's do the reso . . . ."

8

39.     On August 10, 2022, three months _after_ Breakwater first filed its Application with the Zoning Board, the City Council adopted Resolution 2022-360 "clarifying" the City's intent that no cannabis businesses, medical or otherwise, shall be permitted within the City.  Notably, the City chose to adopt a "clarifying resolution" rather than amend the Ordinance to specially prohibit cannabis uses. It is not a coincidence that the Municipal Defendants and their professionals knew that a change in Ordinance would not apply to an already filed application, but a resolution could provide guidance, as stated by the Board Planner on the record at the March 28, 2023, hearing.

40.     On August 12, 2022, while Breakwater's Application was pending before the Zoning Board, Resolution 2022-360 was sent from Director Alonso to each individual Zoning Board of Adjustment member, the Board Attorney, Board Planner, Board Engineer, and the Zoning Board Secretary, in an attempt, ultimately successful, to poison the Breakwater Application.

### Breakwater Continues to Pursue its Application

41.     During the application process, it was discovered by Breakwater's engineer that the existing building on Lot 6 actually protrudes by approximately 1 foot onto Lot 5 which is why Lot 5 is listed on the application, although no work or changes are proposed to that lot.  As testified to during the hearings, the landlord is purchasing the portion of Lot 5 onto which the existing Lot 6 building protrudes.

42.     On November 22, 2022, in response to the comments in the reports of the Board engineering and planning consultants, Breakwater submitted a revised application package to the Zoning Board.  The documents submitted and thereby made part of the record include:

    a.   Revised application with additional owner signature for Lot 5

    b.   A letter from CME Associates Consulting and Municipal Engineers dated 11/18/22 which responded to each item in the Board Professional's reports

    c.  Signed and Sealed plans prepared by Mancini Duffy with a revision date of 11/17/22

    d.  Signed and Sealed plans prepared by CME Associates Consulting and Municipal Engineers with a revision date of 10/24/22

    e.  Signed and Sealed surveys of the subject property

    f.  A parking exhibit prepared by CME Associates Consulting and Municipal Engineers dated 9/13/22

    g.  Drainage Statement prepared by CME Associates Consulting and Municipal Engineers dated 5/24/22 and last revised 7/13/22

    h.  Additional escrow fees, as requested by the City.

43.    Relief requested by this application includes:

    a.  Use Variance approval pursuant to N.J.S.A. 40:55D-70d to allow an Alternative Treatment Center (ATC) as defined by the Jake Honig Compassionate Use Medical Cannabis Act

    b.  Preliminary and Final Site Plan approval pursuant to N.J.S.A. 40:55D-46 and N.J.S.A. 40:55D-50

    c.  Bulk variances for Lot 2 pursuant to N.J.S.A. 40:55D-70 (c) to allow:

        i.  maximum impervious coverage of 92.6% where 90% is required and 100% is existing

        ii.  to allow 1 freestanding sign where the Ordinance does not explicitly mention freestanding signs

    d.  Bulk variances for Lot 6 pursuant to N.J.S.A. 40:55D-70 (c) to allow:

      i.   rear setback of 0 feet from the canopy of the building where 20 feet is required;

     ii.   maximum front yard setback of 42.3 feet from Memorial Drive where 10 feet is required, and 68.8 feet is existing

e.   Bulk variances for existing conditions if deemed necessary by the Board to allow:

      i.   minimum lot size where 10,000 SF is required and 7,500 SF is existing and proposed for Lot 6, Lot 2 is conforming;

     ii.   minimum lot width where 75 feet is required and 50 feet is existing and proposed for Lot 6, Lot 2 is conforming;

    iii.   minimum side yard setback where 5 feet is required and 0 is existing and proposed for Lot 6;

    iv.   minimum combined side yard setback where 10 feet is required, and 0 feet is existing and proposed;

     v.   maximum building cover where 80% is permitted and 88% is existing and proposed for Lot 6;

    vi.   maximum impervious coverage where 90% is permitted and 100% is existing and proposed for Lot 6

f.   Design Waivers

      i.   30-56.4.A.7 – Illumination levels shall not exceed 0.1 foot-candles at the property line, whereas the proposed illumination exceeds 0.1 FC along First Ave.;

     ii.   30-56.4.B.1 – Exterior lighting fixtures shall not exceed a maximum of 14 feet; proposed light fixtures are 16 feet;

iii.   30-56.4.B.3 – Average illumination level not to exceed 1.0 FC, where the average FC is 0.9 but light levels in the parking lot reach 1.4 FC;

iv.   30-59.11 – Offstreet parking and loading facilities shall be located in the rear of the required front yard and parking is proposed in the front yard;

v.   30-59.12A – All off-street parking and loading spaces shall be arranged in an orderly manner to avoid unsafe conditions and to provide adequate access for vehicles and pedestrians using the area[1];

vi.   30-59.13.A.1 – Driveways shall be 18 -34 feet for one-way commercial operations, whereas the proposed one-way drive aisles are 12.5 and 13 feet;

vii.   30.59.13.A.3 – Minimum distance separating two driveways shall be 50 feet whereas the proposed distance between the two driveway openings is 21 feet;

viii.   30-59.13.A.4 – Driveways shall not be located within 5 feet of a side property line whereas the existing loading area driveway is on the side property line;

ix.   30-59.14.A – The design of planting areas within the parking and loading areas shall be adequate to screen parking and loading activities from the street or adjoining lots whereas the loading is screened by a garage door and not landscaping;

---

[1] While this was listed as a required waiver in the Planner's report, it was not indicated what about in the proposed plan did not comply with this section.

12

    x.   30-59.14.B – Off-street parking areas with more than two spaces shall have planting beds, at least 5 feet in width around the perimeter of the parking area; whereas a continuous planting bed surrounding the parking area is not proposed;

   xi.   30-59.14.C – All uncovered off-street parking and loading areas of 20 spaces or more shall be provided with planting islands, whereas planting islands are not proposed along all parking rows;

   xii.   30-59.14.D – Shade trees shall be provided at the rate of one tree for each 4 parking spaces (for a total of 8.5 shade trees) and placed so that all spaces are shaded to the maximum extent possible, whereas 1 shade tree is proposed and additional shade is provided by surrounding buildings;

   xiii.   30-59.14.F – The total landscaped area of any uncovered parking area must not be less than 10% whereas the proposed landscaping covers 7.8% as calculated by the Board Planner, or 13.6% as calculated by the Applicant if drive aisles are excluded; and

   xiv.   30-59.15.B – The minimum area required for each loading space shall be 10 feet wide by 25 feet long by 14 feet in height clearance, whereas the proposed loading doors provide a 12 foot height clearance.

44.    On December 13, 2022, at the regular meeting of the Zoning Board, and notwithstanding Director Alonso's improper May 31, 2022, effort to keep it off, the Application was on the agenda for a hearing.

**The December 13, 2022, Hearing and the City's Continuing Effort to Poison the Well**

45.     At the December 13, 2022, regular meeting of the Zoning Board, the Application was on the agenda for a hearing.  At that meeting, prior to the Application being called, the acting Zoning Board Attorney stated that it was his understanding that the Board wanted to go into executive session with its attorney and other professionals for legal advice and "it has nothing to do with this application, but the Board would like some legal advice with respect to some explanations of the land use law in particular, may be inherently beneficial uses, may be <u>Sica</u> . . . ."

46.     The Board Chairman confirmed that the Board would like "some clarification on those issues."  A Resolution was then read into the record by the Board Chairman to allow the Board to go into executive session for the purpose of providing legal advice with respect to the Municipal Land Use Law.

47.     Following the Board's return from Executive Session, the Breakwater application was called.

48.     Breakwater was represented at the hearing by Matthew E. Gilson, Esq. of Weiner Law Group LLP.

49.     Mr. Gilson began his introduction of the Application.  As Mr. Gilson was preparing to call his first witness, the acting Zoning Board Attorney noted for the record that Mr. Raffetto, the attorney for the City of Asbury Park, was present and requested that Mr. Raffetto be recognized to, out of order, make a comment.

50.     Mr. Raffetto was given the floor and stated "I serve as the municipal attorney for the City of Asbury Park.  I am here this evening to make a statement to place the position of the Mayor and City Council with regard to the Breakwater use variance application on the record.  Specifically, the Mayor and Council object to the use variance application for the following reasons . . . ."  Mr.

Raffetto went on to speak for approximately six (6) minutes about why the Mayor and Council objected to the pending application. He concluded his statement by indicating "Finally, and for the record, the Mayor and City Council submit that the granting of a use variance in this matter would undermine the powers of the governing body and would constitute an impermissible usurpation of the Council's authority to zone. Thank you for allowing me to make this statement and to place the position of the Mayor and City Council on the record in this matter."

51.   Mr. Raffetto was not made available for cross-examination, as are all other witnesses who are required to be available for cross-examination pursuant to N.J.S.A. 40:55D-10(d) and related case law.   See, Witt. v. Borough of Maywood, 328 N.J.Super. 432, 454 (Law Div. 1998), aff'd o.b. 328 N.J. Super. 343 (App. Div. 2000).

52.   Following the preemptive Raffetto presentation, James Froehlich, a representative of the Applicant, testified about business and operational issues. Mr. Froehlich's testimony included the following:

> a.  He is Chief of Staff of Breakwater Treatment and Wellness and has held that position for approximately five (5) years.
>
> b.  Breakwater has been operating since approximately October 2015 serving exclusively medical patients out of their location in Cranbury, New Jersey.
>
> c.  In September of 2022 Breakwater expanded and opened a satellite ATC in Roselle Park, New Jersey. The Roselle Park satellite ATC is similar to the ATC proposed in the current application.

     d.   The proposed Asbury Park location would be a medical ATC only. The cultivation, manufacturing, processing and packaging will still take place at their Cranbury, New Jersey location.

     e.   Proposed hours of operation, security protocols, delivery frequency and methods, and existing visitor information at the other locations.

53.    Mr. Froehlich's testimony provided the Board with information on every aspect of the Applicant's business and all activity that would occur at the proposed location.

54.    Upon the conclusion of Mr. Froehlich's testimony, the Board indicated that the application would be carried until the next available agenda, which was on February 14, 2023.

### Mr. Raffetto's January 19, 2023, Email

55.    Although the Hearing was not to continue until February 14, on January 19, 2023, Mr. Raffetto, ex parte, sent an email with the subject "Asbury Seaweed – Conditional Cannabis License" to Mayor Moor, Deputy Mayor Quinn, Yvonne Clayton, Eileen Chapman, Angela Ahbez, City Manager Donna Vieiro, Michele Alonso, Lisa Esposito and Ronald Mondello. The majority of the email, obtained through an Open Public Records Act request, is redacted but states "I am copying Ron Mondello, Esq. on this communication so that he is aware, as he is representing the A.P. Zoning Board of Adjustment in the pending matter involving the use variance application made by Breakwater Treatment Center [sic] for a medical cannabis license along Memorial Drive."

### The February 14, 2023, Hearing

56.    At the February 14, 2023, hearing before the Zoning Board, Jordan Rizzo, PE, a Project Leader at CME Associates testified on behalf of the Applicant. Mr. Rizzo was accepted by the Board as an expert witness in the field of engineering. Mr. Rizzo provided the following testimony:

a.  The Applicant proposes to convert the existing building to an alternative treatment center and will use the same footprint and the same loading zone that are currently existing and in use.

b.  The loading area will be improved by adding a door that can close and keep the loading vehicle and activities out of sight from Memorial Drive.

c.  A newly constructed parking lot on Lot 2 will contain 34 total parking spaces, including 2 ADA compliant and one EV space, where 27 parking spaces are required by the Ordinance.  There is an alternate method of parking calculation in the Asbury Park Ordinance but even using that method the required number of parking spaces would still be 27 spaces and the proposed parking lot providing 34 parking spaces is compliant. The proposal does not consider or rely on any street parking.

d.  The project will not have any negative impact on the natural environment as it will be constructed in accordance with Freehold Soil Erosion Standards and the proposed development will not impact any existing vegetative wetlands, water bodies, or anything of the sort nor will the existing topography and drainage patterns be altered.

e.  In the planning stages of this project, the layout was looked at from various angles and in his expert engineering opinion the proposed layout works best from a practical standpoint as well as compliance with State and local regulations.

57.    Together with Mr. Froehlich's testimony, Mr. Rizzo's testimony provided all proofs necessary for the Board to grant Preliminary and Final Site Plan approval.

58.     William Mandara, AIA, of Mancini Duffy testified on behalf of the Applicant.  Mr. Mandara was accepted by the Board as an expert witness in the field of architecture.  Mr. Mandara provided the following testimony:

> The combination of existing conditions of the building, State cannabis regulations, municipal regulations, limitations of the parking, and what is currently on site are all considerations that went into the current design as proposed by the Applicant.

59.     After Mr. Mandara's testimony concluded, Mr. Froehlich was recalled to answer certain operational questions.  Once Mr. Froehlich testified, the Board carried the Application to the next available meeting, which was March 28, 2023, and the Applicant granted the Board an extension of time to act on the application as the 120 days was set to expire on March 23, 2023.

### The March 28, 2023, Hearing

60.     At the March 28, 2023, hearing before the Zoning Board, Matthew Seckler, PE, PP, PTOE of Stonefield Engineering testified on behalf of the Applicant.  Mr. Seckler was accepted by the Board as an expert witness in the field of traffic engineering.  Mr. Seckler provided the following testimony:

a.  Traffic counts were performed on January 26th and 28th of 2023 at the proposed location.  New Jersey Department of Transportation standard for adjustment traffic volumes for out of season counts were applied and those January 2023 counts were increased by 33 percent (33%) or the NJDOT factor 1.3.

b.  Mr. Seckler went to Breakwater's Roselle Park facility and performed traffic and parking counts at that location at the peak traffic times as

provided by the Applicant.  In the Roselle Park location between 2:00 p.m. and 3:00 p.m. there were a total of five (5) customers that arrived by vehicle and four (4) customers that walked into the facility in that entire hour; from 3:00 p.m. to 4:00 p.m. there were eight (8) drive in customers and three (3) walk-in customers for a total of 11 customers; between 4:00 p.m. and 5:00 p.m. 13 drive-in customers and one (1) walk-in customer; and between 5:00 p.m. and 6:00 p.m. there were 11 drive-in customers and three (3) walk-in customers for a total of 14 customers in an entire hour.

c.   Based on the numbers observed in the January 2023 traffic count and using the observed traffic created by the proposed use, even in the summer months, one (1) new car would be added to traffic every 4 minutes which would be a de minimis impact that no driver would be able to perceive.

d.   Mr. Seckler performed a parking count at the Roselle Park facility as well as the traffic count; the Roselle Park site has 14 total parking spaces to serve that site and at no point were more than seven (7) cars parked in that parking lot.  Based on his observation of the operation in a similar area with the same end user which successfully operates with 14 parking spaces.  Mr. Seckler concluded that the proposed application with 34 parking spaces will be sufficient for the proposed use.

e.   The level of traffic that will be added by the proposed facility is so small that it will not have a significant change as it does not matter what the unrelated traffic is, the proposed use is still only adding one (1) car every 4 minutes.

    f.   Deliveries would occur between one (1) and three (3) times per week and those deliveries would be done in the Applicant's own vehicles by their own staff.

    g.   He did not perform an analysis of the traffic for a recreational site, as that use is not what this application proposes.

    h.   It is his expert opinion based on the traffic counts done at the Asbury Park location as well as his observations from the Roselle Park location, that the proposed medical alternative treatment center works from a traffic and parking standpoint and based on the information available including the studies performed by CME and by Stonefield as well as the industry standard numbers, the proposed use does not cause a detrimental increase to traffic nor does it create an unsafe condition.

61.    Mr. Seckler's testimony provided proofs necessary for the Board to grant Preliminary and Final Site Plan approval.

62.    Also at the hearing, Ronald Reinertsen, PP, AICP, a Project Leader at CME Associates testified on behalf of the Applicant.  Mr. Reinertsen was accepted by the Board as an expert witness in the field of land use planning.  Mr. Reinertsen provided the following testimony:

    a.   The Applicant is seeking a use variance, specifically a special reasons use variance under the Medici standard.

    b.   The Applicant needs to prove that the site in question is particularly suited for the proposed use as well as to provide an enhanced quality of proof that the variance sought is not inconsistent with the intent and purpose of the Master Plan as well as the negative criteria requiring proof that the

20

proposed use does not pose a substantial detriment to the public good, nor a substantially impair the zone plan or scheme.

c.  Pursuant to case law, the "c" variances sought are ancillary to the proposed use and as such are part of the use variance proofs.

d.  The application before the Board meets the positive criteria required for proving a d variance because:

   i.  by virtue of the fact that this is a State licensed business, that State license establishes that the use serves the general welfare;

   ii.  This application advances purpose G of the MLUL, to provide sufficient space in appropriate locations to meet the needs of all New Jersey citizens;

   iii.  This application advances purpose I of the MLUL to promote a desirable visual environment and creative design techniques.

   iv.  The location of the proposed site near mass transit as well as providing bike parking makes the site accessible to bikes, automobiles, and mass transit furthering the proof that it is particularly suited for this use

   v.  The Applicant currently has at least 1,565 patients at their other two (2) facilities who live within a ten (10) mile radius and 20 minute drive of the proposed Asbury Park location, 426 of which are residents of Asbury Park and Neptune

   vi.  The proposed site is more than 1,000 feet away from State defined sensitive uses, and is one of the very few places in the City where

the proposed use can operate outside of State defined uses and the residential zones

e.  The Application also meets the negative criteria required by <u>Medici</u>.

    i.  The proposed business will operate securely in a well-designed location.

    ii.  It is proposed to be located in an Industrial Zone surrounded by other commercial and retail activity and is well separated from residential zones.

    iii.  The impact of the proposed use should be minimal at most and does not come close to rising to the level of a substantial impact.

    iv.  There are six (6) sections of the Asbury Park Master Plan which he believes in his expert opinion show that this application does not substantially impair the intent and purpose of the zone plan, Zoning Ordinance or the Master Plan

f.  Regarding the design waivers that the Applicant is seeking, on balance they are justified because the proposed parking lot is surrounded on three (3) sides by buildings, the parking lot lighting, landscaping, and layout are designed to maximize the parking, which has been indicated as a priority by several Board members.

g.  The proposed use is an improvement from the existing conditions as related to the building itself.

h.  After the initial reports from the Board professionals, the Applicant revisited the proposed application to see if there was a way to eliminate

22

variances and/or design waivers. The only way that reduction of the design waivers or variances could be accomplished is by using several of the parking spaces which would reduce the number of parking spaces from 34 spaces to 28 spaces. Even with the reduction of the six (6) parking spaces, parking would still be compliant with the Ordinance requirements. However, since parking seemed to be such a major concern with the Board, it was deemed that seeking additional design waivers relating to trees and light pole heights was better than reducing the number of on-site parking spaces.

63.     Mr. Reinertsen's testimony satisfied the requirements and provided all proofs necessary for the Board to grant Use Variance Approval pursuant to case law and the Municipal Land Use Law.

## The Vote

64.     On December 13, 2022, February 14, 2023, and March 28, 2023, the Applicant and its experts provided all of the proofs necessary for the Zoning Board to grant Use Variance, Preliminary and Final Site Plan, and Associated Bulk Variance Approval.

65.     Nonetheless, ostensibly because of the opposition of the City of Asbury Park to locating any medical cannabis facility in the City, but really because of the favoritism concomitant to the relationships of the Mayor and his allies with one or more cannabis vendors other than Breakwater, on March 28, 2023, the Zoning Board voted unanimously to deny Breakwater's application seeking use variance approval, preliminary and final site plan, "c" variance relief and design waiver relief to permit the operation of an ATC.

66.     The Zoning Board Chairman closed the meeting to the public and asked for comments from the Board members.  Each Board member took this opportunity to voice their feelings on this application and indicate what was influencing their vote.

    a.  Board member Harris stated that he is not opposed to cannabis either recreational or medical, but what does bother him is "to override the City Council."

    b.  Board member Glassman discussed the application and stated "I also have to agree with the other commissioners that this is not a role that we should take.  We don't usurp the role of our elected officials."

    c.  Board member Potter stated "I have to agree to [sic] Danny.  My issue stands with the Resolution...where they enhanced the decision to prohibit medical cannabis and I think this is the wrong venue to come before us rather than try to change the City Council's opinion and Ordinance to allow it."

    d.  Board member Lewis stated that he is familiar with Breakwater and their product as it has helped a friend of his.  He stated, "I think Asbury Park would benefit from having a business like Breakwater in Town." However, he went on to state that "Like my colleagues, the line in the sand for me right now is this Resolution that the City Council has been very clear on.  And their intent is very clear.  And as much as I would like to see this business happen and this facility move forward, crossing that line for me is a really difficult one."

## **The Record Before the Zoning Board**

67.     At the time of the vote, the record before the Board consisted of all documents submitted by Plaintiff and testimony provided by Plaintiff and its Experts at the three (3) hearings as well as all letters and reports prepared and submitted by the Board's Professional Consultants.  The letters and reports from the Board Consultants include:

      a.   First Engineering Review prepared by InSite Engineering dated August 4, 2022

      b.   Second Engineering Review prepared by InSite Engineering dated December 7, 2022

      c.   Memorandum from Michael Sullivan and Donna Miller of Clarke Caton Hintz dated August 5, 2022

      d.   Memorandum from Michael Sullivan and Donna Miller of Clarke Caton Hintz dated December 7, 2022

      e.   Letter report from Dolan + Dean Consulting Engineers, LLC dated December 8, 2022

      f.   Letter report from Dolan + Dean Consulting Engineers, LLC dated March 23, 2023

68.     Exhibits made part of the record at the Hearings include:

      a.   Exhibit A-1 is entitled Site Aerial and is an existing condition photograph dated August 9, 2022, prepared by CME Associates

      b.   Exhibit A-2 is a Site Plan rendering prepared by CME Associates and dated May 13, 2022, and is described as a colorized version of the site plan that was submitted with the application

    c.   Exhibit A-3 which is entitled First Floor Construction Plan, and described as Sheet A-101 from the plans submitted with the application prepared by Mancini Duffy last revised on 11/17/2022

    d.   Exhibit A-4 which is Sheet A-701 entitled Elevations prepared by Mancini Duffy with a revision date 11/17/2022

    e.   Exhibit A-5 which is described as Sheet A-102 prepared by Mancini Duffy dated 11/17/2022

    f.   Exhibit A-6 which was the parking exhibit submitted to the Board on November 22, 2022

    g.   Exhibit A-7 which is entitled Loading Zone Exhibit prepared by CME Associates dated March 13, 2023

    h.   Exhibit A-8 which is an aerial of the City;

    i.   A-9 which is a color coded zoning map of the City of Asbury Park;

    j.   Exhibit A-10 which is a map of the City showing all of the 1,000 foot safe zones from the proposed facility; and

    k.   Exhibit A-11 which is another aerial of the 1,000 foot safe zones around the property.

69.    The Zoning Board had regular meetings on April 11, 2023, and April 25, 2023.  The regular meeting of the Zoning Board for May 9, 2023, was cancelled by the Board on May 5, 2023.

70.    As of May 15, 2023, the Zoning Board had not adopted a Resolution memorializing the denial made on March 28, 2023.  Pursuant to the Municipal Land Use Law, specifically, N.J.S.A. 40:55D-10(g)(2) a memorializing resolution must be adopted within 45 days of the vote.  Thus, the resolution should have been adopted no later than May 12, 2023.

71. On May 15, 2023, Applicant's attorney filed a Verified Complaint in Lieu of Prerogative Writs and an Order to Show Cause to compel the adoption of a Resolution memorializing the denial by the Board of Adjustment.

72. At the regular meeting of the Zoning Board on May 23, 2023, it adopted a Resolution memorializing the denial of Applicant's application.

73. The Resolution adopted by the Zoning Board contains dozens of "facts" in its "Statements of Fact" upon which the Conclusions of Law are supposedly based that are contrary to the transcripts. The Resolution adopted further contains multiple statements and claims that are nowhere in the transcripts of any of the three hearings. Further, the Resolution states several times that the Applicant was unwilling to address the Board's concerns or offer conditions or changes to the Application. This is patently untrue, since the Applicant offered several modifications to the project as conditions of any approval to appease the Zoning Board's concerns.

74. Moreover, the Resolution states repeatedly that certain testimony was not provided and that statements by Applicant's experts were mere net opinions, where the transcripts clearly show evidence and testimony presented as the basis for those experts' opinions.

75. The Notice of Decision was published in the Asbury Park Press on May 25, 2023.

76. The stated purposes for adopting the Breakwater Treatment and Wellness Corporation Resolution of Denial were pretextual and not sufficiently supported by law or fact.

77. The false premises and pretextual justification cited in the Breakwater Treatment and Wellness Corporation Resolution are without an adequate basis for the denial of Plaintiff's application.

78. The testimony and evidence cited in the Breakwater Treatment and Wellness Corporation Resolution of Denial did not justify adoption of the Resolution of Denial.

27

79.     The Breakwater Treatment and Wellness Corporation Resolution of Denial does not otherwise contain sufficient rationale for denying the application.

80.     The Breakwater Treatment and Wellness Corporation Resolution of Denial is vague, and not calculated to benefit the public health, morals, safety or general welfare.

81.     The Breakwater Treatment and Wellness Corporation Resolution of Denial ignores the proofs offered by the Plaintiff and its professionals regarding the proposed variance and design waiver relief and arbitrarily denies the requested relief sought by the Plaintiff.

82.     The Breakwater Treatment and Wellness Corporation Resolution of Denial was adopted in furtherance of the improper scheme of the Municipal Defendants to prevent Breakwater from operating any facility in the City of Asbury Park.

83.     The Municipal Defendants took this action as part of a plan to favor competitors of Breakwater, including but not limited to Asbury Seaweed, and to treat them preferably to Breakwater.

84.     The Zoning Board exceeded the authority delegated to it by law when it adopted the Breakwater Treatment and Wellness Corporation Resolution of Denial.

85.     New Jersey Courts require government officials to act solely in the public interest and to "turn square corners" in dealing with the public.

86.     The Breakwater Treatment and Wellness Corporation Resolution of Denial did not serve the public interest, which would have provided community benefits in the form of allowing retail sales of medical cannabis.

87.     The Breakwater Treatment and Wellness Corporation Resolution of Denial was not made to serve a legitimate governmental purpose, but rather constituted an Ad Hoc decision that deprived Breakwater Treatment and Wellness Corporation of its right to equal protection under the United States Constitution and New Jersey Constitution.

88.     Accordingly, the Breakwater Treatment and Wellness Corporation Resolution of Denial is arbitrary, capricious and unreasonable and must be declared null and void.

## COUNT ONE

### (42 U.S.C. § 1983)

89.     Breakwater repeats the allegations of Paragraphs 1 – 88 as if set forth at length.

90.     By their actions, as aforesaid, and acting with deliberate and/or conscious indifference to Breakwater's constitutional rights, the Municipal Defendants purposefully discriminated against Breakwater and violated Breakwater's right to Substantive Due Process under Fourteenth Amendments to the United States Constitution, by depriving Breakwater of a fair hearing, as guaranteed by law, and denied Breakwater Equal Protection under the law under the Fourteenth Amendment to the United States Constitution by, eliminating Breakwater as Asbury Park based competition,  treating other potential competitors of Breakwater more favorably than Breakwater without a legitimate reason to do so,  all of which violations were given imprimatur by an official decision or decisions made under color of law by one or more individuals vested with authority, actual and/or implied, to make such decisions for a public body of the State of New Jersey.

91.     The consequence of Defendants' actions is that Defendants denied Plaintiff a full and fair hearing on its Zoning Board application by, inter alia, showing political favoritism to another potential operator and discriminatory animus to the Plaintiff; by negatively prejudging the Plaintiff's Zoning Board application; and by denying the Plaintiff an impartial decision maker.

92.     As a result, Breakwater has suffered and will continues to suffer serious financial and reputational damages.

93.     If the Municipal Defendants are permitted to grant the legal authority to a competitor of Breakwater to operate in Asbury Park during the pendency of this action, Breakwater will suffer damages for which it has no adequate remedy at law.

**WHEREFORE**, Breakwater Treatment and Wellness Corp. demands damages on this COUNT ONE, against all Defendants, jointly and severally, for:

(a) Compensatory Damages

(b) Punitive Damages

(c) In the event of another application for a cannabis retail business within the borders of Asbury Park while this action is pending, then for injunctive relief prohibiting the Municipal Defendants from approving the operation of any such business within the borders of Asbury Park unless the Breakwater application is approved.

(d) Attorneys' fees and costs of suit, including but not limited to all recovery permitted by 42 U.S.C. § 1988

(e) Such other relief as the Court and/or triers of fact may deem just.

**Weiner Law Group, LLP**
Attorneys for Plaintiff
Breakwater Treatment and
Wellness Corp.

By: _____
STEPHEN J. EDELSTEIN

Dated:  May 10, 2024

30

## JURY DEMAND

Plaintiff demands a trial by jury.

Weiner Law Group, LLP
Attorneys for Plaintiff
Breakwater Treatment and
Wellness Corp.

By: _____
STEPHEN J. EDELSTEIN

Dated:  May 10, 2024