**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| BREAKWATER TREATMENT AND WELLNESS CORP., <br><br> Plaintiff, <br><br> v. <br><br> THE CITY OF ASBURY PARK, *et al.*, <br><br> Defendants. | Civil Action No. 23-3661 (MAS) (JTQ) <br><br> **MEMORANDUM OPINION** |

**SHIPP, District Judge**

This matter comes before the Court on two separate Motions to Dismiss Plaintiff Breakwater Treatment and Wellness Corporation's ("Plaintiff") Amended Complaint. (ECF No. 30.) The first Motion is by Defendants Christopher Avallone ("Avallone"), Wendi Glassman ("Glassman"), Daniel Harris ("Harris"), Russell Lewis ("Lewis"), Jill Potter ("Potter"), John Scully ("Scully"), and the Asbury Park Zoning Board of Adjustment ("the Zoning Board") (ECF No. 34) and the second is by Defendants Michele Alonso ("Alonso"), John Moor ("Moor"), and the City of Asbury Park ("the City") (ECF No. 35) (collectively, "Defendants"[1]). Plaintiff opposed (ECF No. 45), and Defendants replied, respectively (ECF Nos. 46, 49). The Court has considered the parties' written submissions and decides the motions without oral argument, pursuant to Local Civil Rule 78.1(b). For the reasons set forth below, both Motions to Dismiss are granted.

---

[1] Plaintiff's Amended Complaint also identifies fictitious Defendants "John Doe and/or Jane Does 1-25" and "XYZ Companies 1-10." (Am. Compl. ¶¶ 14, 15, ECF No. 30.)

## I.    BACKGROUND[2]

### A.    The Parties

Plaintiff "is one of the original license holders and medical cannabis businesses in the State of New Jersey." (Am. Compl. ¶ 3.)

The City is a municipal corporation of the State of New Jersey. (*Id.* ¶ 6.) Moor is the Mayor of Asbury Park and presides at all meetings of the City Council. (*Id.* ¶ 7.) Alonso is the Director of Planning and Redevelopment of the City. (*Id.* ¶ 8.)

The Zoning Board is a municipal board of the City and has primary jurisdiction over Plaintiff's zoning-approval application. (*Id.* ¶ 9.) The Zoning Board is comprised of: (1) Avallone (Chair); (2) Scully (Vice Chair); and (3) Lewis, Glassman, Harris, and Potter (members). (*Id.* ¶¶ 10-12.)

### B.    Alleged Scheme

Plaintiff seeks to open a satellite Alternative Treatment Center ("ATC") in an existing, leased, industrial building in Asbury Park.[3] (*Id.* ¶¶ 4, 21-22.) In May 2022, Plaintiff submitted a zoning-approval application for a use variance, preliminary and final site plan approval, and related bulk variances to the Zoning Board (the "Application"). (*Id.* ¶¶ 5, 21.)

#### 1.    *Plaintiff's Request for a Hearing*

In response to the Application, Alonso sent correspondence to Plaintiff's attorney stating that the Application could not be heard by the Zoning Board because the City had prohibited all

---

[2] The Court, as it must, accepts as true all of Plaintiff's well-pleaded factual allegations and "construe[s] the [amended] complaint in the light most favorable to the [P]laintiff." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (citation omitted).

[3] Specifically, Plaintiff seeks to convert the existing space by using the same footprint and same loading zone currently in use. (Am. Compl. ¶ 22.) Lot 6 is an existing two-story commercial building used for a car business, while Lot 2 is vacant and used to store vehicles. (*Id.* ¶¶ 22-23.)

cannabis sales in the municipality. (*Id.* ¶ 24.) Plaintiff's attorney replied, stating that Plaintiff is entitled to a hearing before the Zoning Board "based on case law as well as the Municipal Land Use Law [("MLUL")]." (*Id.* ¶ 26.)

Around June 27, 2022, Plaintiff's attorney sent correspondence to Alonso indicating that "the forty-fifth day from submission of [the Application] had passed and as such, pursuant to the Asbury Park Ordinance and the MLUL, the application is deemed administratively complete." (*Id.* ¶ 27.) The following week, Plaintiff's attorney sent follow-up correspondence, requesting that the Application be listed in an agenda for a hearing before the Zoning Board. (*Id.* ¶¶ 28, 30.) The same day, the City indicated that Plaintiff's letter was received and was "under review." (*Id.* ¶ 29.)

Plaintiff asserts that around the same time, an attorney for a competing cannabis business, Asbury Seaweed, LLC ("Asbury Seaweed") allegedly sent correspondence to Moor about "guidance from the [New Jersey Department of Health] with respect to satellite locations of ATCs with specific advice on how to 'argue against' a potential ATC seeking a variance in Asbury Park."[4] (*Id.* ¶¶ 19, 31.) Plaintiff avers that "[b]ased on the dates, [the correspondence] is clearly in reference to the [Application], which was filed on May 12, 2022, as there [we]re no other pending cannabis applications in the City." (*Id.*)

Plaintiff's attorney thereafter received correspondence from Alonso indicating that the Application would be on the agenda of the Zoning Board's August 9, 2022, meeting, provided that all fees were paid and necessary items were submitted. (*Id.* ¶ 32.) The same day, Moor sent

_____

[4] Plaintiff, however, does not allege that Asbury Seaweed was granted a license or a variance to operate a cannabis-related business in the City. (*See generally* Am. Compl.)

correspondence to several Defendants,[5] "questioning why the Zoning Board is required to hear the [A]pplication." (*Id.* ¶ 33.)

On or around July 28, 2022, Plaintiff published notice of the scheduled hearing and certified mailings of the notice were sent to required recipients. (*Id.* ¶ 34.) Plaintiff's attorney also sent correspondence to the Zoning Board, attaching all supplemental submissions as required by the Zoning Board's previous correspondence. (*Id.* ¶ 35.)

On August 9, 2022, the day of the Zoning Board meeting, Plaintiff's attorney sent correspondence to the City to request that the Application "be carried to" the Zoning Board's September 13, 2022, hearing. (*Id.* ¶ 37.) In the request, Plaintiff agreed to extend the Zoning Board's "time to act on the [A]pplication" if such extension was necessitated by Plaintiff's requested delay. (*Id.*)

### 2.    *Resolution 2022-360 and Plaintiff's Revised Application*

Plaintiff alleges that in July 2022, an attorney was "brought in as a 'cannabis specialist'" to represent the Zoning Board solely for the Application. (*Id.* ¶ 38.) The attorney suggested in an e-mail correspondence to Alonso, Avallone, and others that "a use variance for cannabis would be a[n] usurpation of the governing body's authority if the use was 'specifically excluded' from the Zoning Ordinance." (*Id.*)

On August 10, 2022, three months after Plaintiff submitted the Application, the City Council[6] adopted Resolution 2022-360, which clarified the City's intent that no cannabis

---

[5] Plaintiff does not specify which Defendants received this correspondence.

[6] Plaintiff does not clarify the relationship between the City and the City Council, or whether the two entities are identical. (*See generally* Am. Compl.) For purposes of this Opinion, the Court recites the facts as alleged by Plaintiff.

business—medical or otherwise—shall be permitted within the City.[7] (*Id.* ¶ 39.) Shortly thereafter, Alonso sent Resolution 2022-360 to the Zoning Board and its members. (*Id.* ¶ 40.)

On November 22, 2022, Plaintiff submitted a revised application ("Revised Application") to the Zoning Board.[8] (*Id.* ¶ 42.)

### 3.      *The Zoning Board Hearings*

The Revised Application was considered on December 13, 2022, during the Zoning Board's regular meeting.[9] (*Id.* ¶¶ 45, 47.) The City's attorney briefly made a statement[10] indicating that Moor and the City Council "object to the use variance application" in part because "granting of a use variance . . . would undermine the powers of the governing body and would constitute an impermissible usurpation of the [City] Council's authority to zone."[11] (*Id.* ¶ 50.) Plaintiff's representative provided testimony about the business and operational issues, such as that the Asbury Park location would be a medical ATC only and that Plaintiff had recently opened a similar ATC in Roselle Park. (*Id.* ¶ 52.) In concluding the hearing, the Zoning Board indicated that the

---

[7] Plaintiff asserts that the City intentionally chose to adopt a "clarifying resolution" rather than amend the existing ordinance because a change in the ordinance would not apply to the already-filed Application. (Am. Compl. ¶ 39.)

[8] After submitting the Application, Plaintiff allegedly discovered that Lot 6 protrudes onto Lot 5 by approximately a foot, and therefore decided to add Lot 5 to the Revised Application, but no work or changes were specifically proposed to Lot 5. (Am. Compl. ¶ 41.) Plaintiff does not clarify whether any additional changes were made to the Revised Application. (*See id.* ¶¶ 41-44.)

[9] An executive session was first held with the Zoning Board and the Zoning Board's attorney for clarification on land use law. (Am. Compl. ¶¶ 45-46.)

[10] Plaintiff argues that the City's attorney interrupted Plaintiff's attorney, who was preparing to call the first witness, and spoke "out of order[.]" (Am. Compl. ¶ 49.)

[11] Plaintiff alleges that the City's attorney was not made available for cross-examination as required by statute and relevant case law. (Am. Compl. ¶ 51.)

Revised Application "would be carried until the next available agenda, which was on February 14, 2023." (*Id.* ¶ 54.)

On January 19, 2023, the City's attorney sent e-mail correspondence titled "Asbury Seaweed – Conditional Cannabis License," to Moor, Alonso, and others. (*Id.* ¶ 55.) The unredacted portion states: "I am copying [the "cannabis specialist" attorney] on this communication so that he is aware, as he is representing the [Zoning Board] in the pending matter involving the use variance application made by [Plaintiff] . . . for a medical cannabis license along Memorial Drive." (*Id.*)

The Revised Application was again discussed during the Zoning Board's February 14, 2023, meeting. (*Id.* ¶ 56.) Plaintiff called expert witnesses in the field of engineering and architecture to provide testimony. (*Id.* ¶¶ 56, 58.) The Zoning Board thereafter carried the Revised Application to the March 28, 2023, Zoning Board meeting.[12] (*Id.* ¶ 59.) At the subsequent March 28, 2023, Zoning Board meeting, Plaintiff called expert witnesses in the fields of traffic engineering and land use planning to testify in support of its Revised Application. (*Id.* ¶¶ 60, 62.) Plaintiff argues that the expert witnesses "provided all proofs necessary for the [Zoning] Board to grant" the Revised Application. (*Id.* ¶¶ 57, 61, 63-64.)

### 4.    *The Zoning Board's Vote and Decision*

On March 28, 2023, the Zoning Board voted unanimously to deny the Revised Application. (*Id.* ¶ 65.) According to Plaintiff, the Zoning Board closed the meeting to the public and asked the Zoning Board members to state the reasons for their votes denying the Revised Application. (*Id.* ¶ 66.) Many of the Zoning Board members expressed concern that the Revised Application sought to "override" City Resolution 2022-360. (*Id.*)

---

[12] Although the Revised Application was set to expire on March 23, 2023, 120 days after it was submitted, Plaintiff indicates that it granted an extension to the Zoning Board to act on the Revised Application. (Am. Compl. ¶ 59.)

In May 2023, the Zoning Board adopted a resolution memorializing the denial of the Revised Application.[13] (*Id.* ¶ 72.) Plaintiff asserts, however, that the resolution contains erroneous facts that are contrary to the Zoning Board's hearing transcripts and that the resolution falsely states that Plaintiff refused to address the Zoning Board's concerns regarding the Application or Revised Application. (*Id.* ¶ 73.) Plaintiff also alleges that the Zoning Board falsely considered the expert witness opinions as "mere net opinions" despite evidence and testimony in the transcripts to the contrary. (*Id.* ¶ 74.)

In short, Plaintiff asserts that its Revised Application was denied "in furtherance of [an] improper scheme" by Defendants "to prevent [Plaintiff] from operating any facility in . . . Asbury Park" and that Defendants "favor competitors" such as Asbury Seaweed.[14] (*Id.* ¶¶ 18, 82-83.) As support, Plaintiff asserts that various members of the City, including Moor, were meeting and communicating with representatives of Asbury Seaweed. (*Id.* ¶ 19.) Plaintiff alleges that "Moor and his colleagues" arranged meetings with Asbury Seaweed, gave Asbury Seaweed insight and advice, and generally attempted to "ease Asbury Seaweed's path to operating [an ATC] in Asbury Park." (*Id.* ¶ 20.)

Moreover, Plaintiff argues that the stated purposes for the Zoning Board's decision were "pretextual and not sufficiently supported by law or fact" because the testimony and evidence

---

[13] Plaintiff also argues that the Zoning Board did not adopt a resolution memorializing its denial of the Revised Application within 45 days of the vote, despite being required to do so pursuant to N.J. Stat. Ann. § 40:50D-10(g)(2). (Am. Compl. ¶ 70.)

[14] Similarly, Plaintiff avers that the Revised Application was rejected because of "favoritism concomitant to the relationships of [Moor] and his allies with one or more cannabis vendors other than [Plaintiff] . . . ." (Am. Compl. ¶ 65.)

provided by Plaintiff do not justify denial of the Revised Application.[15] (*Id.* ¶¶ 76-78, 81.) Plaintiff avers that the Zoning Board's resolution does not provide "sufficient rationale for denying the [Revised Application]" and "is vague, and not calculated to benefit the public health, morals, safety[,] or general welfare." (*Id.* ¶¶ 79-80.) As a result, Plaintiff alleges that the Zoning Board exceeded its authority by denying the Revised Application because the decision is against public interest as it "would have provided community benefits in the form of allowing retail sales of medical cannabis." (*Id.* ¶¶ 84-86.) Plaintiff asserts that the decision was arbitrary, capricious, and unreasonable, and deprived Plaintiff of its right to due process and equal protection under the U.S. Constitution and New Jersey Constitution. (*Id.* ¶¶ 87-88.)

### C.   Commencement of this Suit

Based upon the above allegations, Plaintiff initiated the instant action on May 10, 2023, filing an eight-count Complaint ("Original Complaint") asserting federal claims under 42 U.S.C. § 1983 for alleged violation of substantive due process and equal protection under the Fourteenth Amendment (Count One) and under 42 U.S.C. § 1985 for alleged violation of substantive due process and equal protection under the Fifth Amendment (Count Two). (*See generally* Compl., ECF No. 1.) The Original Complaint also asserted claims under New Jersey law in the nature of an action in lieu of prerogative writs, challenging the Zoning Board's denial of Plaintiff's land-use application (Counts Three to Eight). (*See id.*)

On April 10, 2024, the Court dismissed all of Plaintiff's claims after Defendants initially moved to dismiss. (ECF No. 28.) More specifically, the Court dismissed Plaintiff's: (1) due process

---

[15] Plaintiff notes that, at the time of the vote, the Zoning Board had in its possession: (1) the documents attached to the Revised Application; (2) testimony provided by Plaintiff and the expert witnesses; and (3) letters and reports prepared by the Zoning Board's professional consultants. (Am. Compl. ¶ 67.)

claim under the Fifth Amendment with prejudice; (2) substantive due process and equal protection claims under the Fourteenth Amendment without prejudice; and (3) § 1985 claim without prejudice.[16] (*Id.*) Plaintiff timely filed an Amended Complaint on May 10, 2024, asserting a single count under § 1983 for alleged violation of substantive due process and equal protection under the Fourteenth Amendment. (ECF No. 30.) Plaintiff's alleged facts in its Amended Complaint remain largely the same as those in the Original Complaint. (*Compare* Am. Compl., *with* Compl.; Pl.'s Opp'n Br. 16, ECF No. 45-2 ("The facts have not changed . . . .").) Defendants again moved to dismiss (ECF Nos. 34, 35), Plaintiff opposed (ECF No. 45), and Defendants replied (ECF Nos. 49, 50).

## II.    **LEGAL STANDARD**

Federal Rule of Civil Procedure[17] 8(a)(2) "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

A district court conducts a three-part analysis when considering a motion to dismiss under Rule 12(b)(6). *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). First, the court must identify "the elements a plaintiff must plead to state a claim[.]" *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009). Second, the court must identify and accept as true all of the plaintiff's well-pleaded factual allegations and "construe the complaint in the light most favorable to the plaintiff[.]" *Fowler*, 578 F.3d at 210 (citation omitted). The court can discard bare legal conclusions or factually

---

[16] Because the Court dismissed all of Plaintiff's federal claims, it declined to reach Plaintiff's state law claims. (*See generally* ECF No. 28.)

[17] All references to a "Rule" or "Rules" hereinafter refer to the Federal Rules of Civil Procedure.

unsupported accusations that merely state the defendant unlawfully harmed the plaintiff. *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp.*, 550 U.S. at 555). Third, the court must determine whether "the [well-pleaded] facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Fowler*, 578 F.3d at 211 (quoting *Iqbal*, 556 U.S. at 679). A facially plausible claim "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 210 (quoting *Iqbal*, 556 U.S. at 678). On a Rule 12(b)(6) motion, "[t]he defendant bears the burden of showing that no claim has been presented." *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005) (citing *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991)).

III.   **DISCUSSION**

Plaintiff, in its Amended Complaint, alleges violations of the Fourteenth Amendment's Due Process Clause and Equal Protection Clause, pursuant to 42 U.S.C. § 1983. (*See* Am. Compl. ¶¶ 89-93.)

To pursue a § 1983 claim, a plaintiff must allege that: (1) a "right secured by the Constitution and laws of the United States" was violated; and (2) the violation was made by a person acting "under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988) (citations omitted); *City of Okla. City v. Tuttle*, 471 U.S. 808, 816 (1985) (stating that although § 1983 does not create any substantive rights, it provides a party with the right to sue when officials violate their substantive rights).

Defendants argue that Plaintiff cannot satisfy the first prong—that a specific constitutional right was violated. (Zoning Board's Moving Br. 6-10, ECF No. 34-1; City's Moving Br. 10-16, ECF No. 35-1.) Plaintiff, on the other hand, argues that it has adequately alleged that Defendants

have violated its substantive due process and equal protection rights guaranteed under the Fourteenth Amendment. (Pl.'s Opp'n Br. 20-22.) The Court considers the arguments below.

### A.    Due Process Under the Fourteenth Amendment

Plaintiff asserts that Defendants violated Plaintiff's right to due process under the Fourteenth Amendment by depriving Plaintiff of a full and fair hearing by an impartial decision-maker because of "political favoritism." (Am. Compl. ¶ 91.)

> The Due Process Clause of the Fourteenth Amendment provides that no state shall "deprive any person of life, liberty, or property, without due process of law." U.S. CONST. AMEND. XIV, § 1. It is well established that the Due Process Clause contains both a procedural and substantive component. *American Exp. Travel Related Servs., Inc. v. Sidamon–Eristoff*, 669 F.3d 359, 366 (3d Cir. 2012) . . . . To state a substantive due process claim, a plaintiff must show: (1) he was deprived of a protected property interest; and (2) a state actor acted with a degree of culpability that shocks the conscience. *Chainey v. Street*, 523 F.3d 200, 219 (3d Cir. 2008); *Maple Prop., Inc. v. Township of Upper Providence*, 151 F. App'x 174, 179 (3d Cir. 2005) (finding conscience-shocking behavior where the misconduct involves corruption, self-dealing, or a concomitant infringement on other fundamental individual liberties).

*Michael Conway, Proprietor EHT Tavern, LLC v. Davis*, No. 16-4511, 2017 WL 3151242, at *4 (D.N.J. July 25, 2017). In short, to adequately allege a violation of substantive due process, Plaintiff must first "clearly identify what the nature of its interest . . . was and why that interest was constitutionally protected." *Winfield Scott Tower Urb. Renewal LP v. Luciani*, No. 23-133, 2024 WL 383980, at *3 (D.N.J. Feb. 1, 2024).

Here, even assuming Plaintiff adequately alleged it has a property interest protected[18] by due process, Plaintiff fails to adequately allege that Defendants' deprivation of that property interest "shocks the conscience." The Third Circuit expressly adopted the shocks the conscience standard for land use actions in *United Artists Theatre Cir., Inc. v. Township of Warrington*, repudiating the "less demanding improper motive test" that had previously governed such cases. 316 F.3d 392, 400 (3d Cir. 2003) (internal quotation marks omitted). In doing so, the Third Circuit noted that this standard "is designed to avoid converting federal courts into super zoning tribunals." *Eichenlaub v. Township of Indiana*, 385 F.3d 274, 285 (3d Cir. 2004). Accordingly, a substantive due process claim cannot survive if the challenged conduct "does not rise sufficiently above that at issue in a normal zoning dispute to pass the 'shocks the conscience test.'" *Id.* at 286.

This invites the question: what is sufficient to "shock the conscience"? Although it "varies depending on the factual context," *id.* at 285 (quoting *United Artists*, 316 F.3d at 400), the standard encompasses "only the most egregious official conduct." *Id.* (quoting *County of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998)). Actions taken in violation of state law, in bad faith, due to improper motive, or based on considerations outside the actor's jurisdiction are generally not sufficiently egregious to "shock the conscience." *See United Artists*, 316 F.3d at 402 (citing with approval *Chesterfield Dev. Corp. v. City of Chesterfield*, 963 F.2d 1102, 1104-05 (8th Cir. 1992); *PFZ Props., Inc. v. Rodriguez*, 928 F.2d 28, 32 (1st Cir. 1991); *Creative Env'ts, Inc. v. Estabrook*, 680 F.2d 822, 833 (1st Cir. 1982)); *Corneal v. Jackson Township*, 313 F. Supp. 2d 457, 466 (M.D. Pa. 2003), *aff'd*, 94 F. App'x 76 (3d Cir. 2004).

---

[18] Defendants argue that Plaintiff fails to adequately allege a protected property interest. (Zoning Board's Moving Br. 6-7; City's Moving Br. 12-13 (arguing that Plaintiff is not a property owner with a property interest but instead is a proposed operator and since Asbury Park Code § 30-15 prohibits any use that is not expressly permitted in a zone district, there can be no deprivation if no property right exists).)

12

Absent allegations of corruption, self-dealing, bias against an ethnic group, or intent to interfere with a constitutionally-protected activity, the Third Circuit and district courts have hesitated to find official behavior in the land-use context conscience-shocking. *See Eichenlaub*, 385 F.3d at 286; *Thorpe v. Upper Makefield Township*, 271 F. Supp. 3d 750, 755 (E.D. Pa. 2017), *aff'd*, 758 F. App'x 258 (3d Cir. 2018); *Good v. Trish*, No. 06-1736, 2007 WL 2702924, at *6 (M.D. Pa. Sept. 13, 2007) (quoting *Prosperi v. Township of Scott*, No. 06-501, 2006 WL 2583754, at *4 (W.D. Pa. Sept. 7, 2006)). Even where a plaintiff alleges corruption, such conduct may not shock the conscience if it relates to a legitimate government purpose. *See Thornbury Noble, LTD. v. Thornbury Township*, 112 F. App'x 185, 188 (3d Cir. 2004) (explaining that the most nefarious interpretation of the board's actions—that it selected one developer over another because of a $600,000 contribution—could not be considered to shock the conscience because it was motivated by a legitimate municipal goal); *see also Good*, 2007 WL 2702924, at *6 (dismissing claims because the court could not conclude that the official's "actions bore *no reasonable relation* to the legitimate government interest in enforcing local land use ordinances").

Plaintiff, again, alleges that it was "depriv[ed] . . . of a fair hearing, as guaranteed by law"[19] (Am. Compl. ¶ 90), but fails to point this Court to new allegations that might suggest why the hearing was unfair or would otherwise "shock the conscience." Rather, Plaintiff merely alleges, in a conclusory manner, that it was denied a full and fair hearing due to a showing of "political favoritism." (*Id.* ¶ 91.) Even though Plaintiff alleges that Defendants acted "improperly" due to

---

[19] To be sure, "[t]he Third Circuit recently reaffirmed that '[t]he fundamental requirement of due process is the opportunity to be heard and it is an opportunity which must be granted at a meaningful time and in a meaningful manner.'" *Affinity Healthcare Grp. Voorhees, LLC v. Township of Voorhees*, 624 F. Supp. 3d 494, 521 (D.N.J. 2022), *aff'd*, No. 22-2769, 2024 WL 195471 (3d Cir. Jan. 18, 2024) (citing *S. Allegheny Pittsburgh Rest. Enters., LLC v. City of Pittsburgh*, 806 F. App'x 134, 139 (3d Cir. 2020)).

13

"political favoritism," this by itself is insufficient to "shock the conscience." *See Thornbury Noble*, 112 F. App'x at 188. That is, Plaintiff fails to adequately allege that Defendants' actions bore no reasonable relation to Defendants' interest in enforcing local land use ordinances. *See Good*, 2007 WL 2702924, at *6. The Court, therefore, reminds Plaintiff that "[l]and-use decisions are matters of local concern, and such disputes [are] not transformed into substantive due process claims based only on allegations that government officials acted with 'improper' motives." *United Artists*, 316 F.3d at 402. The "shock the conscience" standard's stringency reflects maintenance of the proper proportions of constitutional, as opposed to ordinary tort, violations, *e.g.*, tortious interference. *See Lewis*, 523 U.S. at 847 n.8.

At bottom, Plaintiff, again, seemingly argues that it was denied due process by being deprived of a fair hearing because Plaintiff did not get its desired result—approval of its Revised Application. (*See generally* Am. Compl.) A federal court, however, is not the proper venue to challenge zoning board decisions when a plaintiff does not get its desired result. *See United Artists*, 316 F.3d at 402 ("Application of the 'shocks the conscience' standard in [the land-use] context also prevents [courts] from being cast in the role of a 'zoning board of appeals.'"). In other words, "[j]ust because Plaintiff[] disagree[s] with the [Zoning] Board's ultimate decision does not mean [it] w[as] not given a fair opportunity to present [its] zoning application to the [Zoning] Board." *Affinity Healthcare Grp. Voorhees, LLC*, 624 F. Supp. 3d at 521. As such, the Court finds that Plaintiff fails to sufficiently allege that Defendants engaged in behavior that would "shock the conscience" and thus fails to state a substantive due process claim. The Court, accordingly, dismisses Plaintiff's substantive due process claim under the Fourteenth Amendment without prejudice.

### B.    Equal Protection Under the Fourteenth Amendment

Next, Plaintiff alleges that it was denied equal protection under the Fourteenth Amendment because Defendants, in effect, "eliminat[ed] [Plaintiff] as Asbury Park based competition" and "treat[ed] other[s] more favorably than [Plaintiff] without a legitimate reason to do so."[20] (Am. Compl. ¶ 90.) Specifically, Plaintiff asserts that Defendants "have been meeting and communicating with principal(s) and representatives of Asbury Seaweed" and have attempted to "ease Asbury Seaweed's path to operating [an ATC] in Asbury Park." (*Id.* ¶¶ 19-20.)

"To state a claim under the Equal Protection Clause, . . . plaintiff must allege that[:] (1) [it] is a member of a protected class; (2) that [it] was treated differently from similarly situated individuals; and (3) that this disparate treatment was based on [its] membership in the protected class. *Kaul v. Christie*, 372 F. Supp. 3d 206, 254 (D.N.J. 2019) (citing *Kasper v. County of Bucks*, 514 F. App'x 210, 214-15 (3d Cir. 2013)). That is,

> [t]he Fourteenth Amendment provides that "[n]o State[21] shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. CONST. amend. XIV, § 1. "This is essentially a direction that all persons similarly situated should be treated alike." *Shuman ex rel. v. Pe[nn] Manor Sch. Dist.*, 422 F.3d 141, 151 (3d Cir. 2005) (citation omitted) . . . . [Accordingly,] a plaintiff must adequately allege that [it was] purposefully discriminated against and "that [it] received different treatment from that received by other individuals *similarly situated*." *Id.* (citations omitted). "Persons are similarly situated under the Equal Protection Clause when they are alike in all relevant aspects." *Startzell v. City of Phila.*, 533 F.3d 183, 203 (3d Cir. 2008) (quotation marks and citation omitted).

---

[20] Plaintiff acknowledges that no other business has been granted a license or a variance to operate a cannabis-related business—recreational or medicinal—in the City. (Am. Compl. ¶¶ 92, 96, 132.)

[21] "Municipalities constitute the state for purposes of Fourteenth Amendment protections." *Associated Builders & Contractors, Inc. v. County of Northampton*, 376 F. Supp. 3d 476, 492 (E.D. Pa. 2019), *aff'd*, 808 F. App'x 86 (3d Cir. 2020) (citing *City of Richmond v. J.A. Croson Co.*, 488 U.S. 469 (1989)).

*Deejaiz LLC v. Township of Franklin*, No. 23-3192, 2024 WL 493270, at *8 (D.N.J. Feb. 8, 2024).

Here, the Court's analysis can be brief because Plaintiff offers no new substantive amendments to its equal protection claims. First, in this Court's April 10, 2024 Opinion dismissing Plaintiff's Original Complaint (the "Previous Opinion"), the Court explained that "Plaintiff fail[ed] to adequately allege that Plaintiff and its alleged competitor, Asbury Seaweed, are similarly situated." (Previous Op. 13, ECF No. 28.) As this Court has already found, "[t]o state generally that Asbury Seaweed is also 'a recreational cannabis business and a potential competitor of [Plaintiff]' is inadequate to meet the required standard." (*Id.* (citations omitted).) Second, in the Previous Opinion, this Court found that "Plaintiff fail[ed] to allege that Defendants purposefully discriminated against Plaintiff." (*Id.* (citation omitted).) The Court thus explained that merely "[a]lleging that Asbury Seaweed and Defendants exchanged e-mail correspondence ([Am.] Compl. ¶¶ 19-20, 31, 55) is insufficient to maintain an equal protection claim." (*Id.* (citation omitted).) The same holds true for Plaintiff's Amended Complaint, which contains the same allegations as Plaintiff's Original Complaint. (*Compare* Am. Compl. ¶¶ 19-20, 31, 55, *with* Compl. ¶¶ 19-20, 31, 55.) As such, for the reasons stated in the Previous Opinion, any equal protection claim under the Fourteenth Amendment based on the allegations set forth in the Amended Complaint is dismissed without prejudice.[22]

---

[22] Having found that Plaintiff fails to establish a due process claim and an equal protection claim under the Fourteenth Amendment, the Court, at this juncture, again declines to assess Defendants' arguments as to qualified immunity. (Zoning Board's Moving Br. 15-17; City's Moving Br. 16-20.)

## IV.    CONCLUSION

For the reasons set forth herein, both Motions to Dismiss are granted.[23] The Court will enter an Order consistent with this Memorandum Opinion.

MICHAEL A. SHIPP
UNITED STATES DISTRICT JUDGE

---

[23] The Court briefly notes that Plaintiff failed to heed to the Court's instruction that Plaintiff shall address whether all administrative remedies were exhausted in its Amended Complaint. (Previous Op. 16 n.21.) The Court, however, will afford Plaintiff one final opportunity to file a second amended complaint. Should Plaintiff choose to file a second amended complaint, Plaintiff is expected to also address whether it has exhausted all administrative remedies.